[No. B228686. Second Dist., Div. One. Oct. 4, 2011.]

ROBERT LANIGAN, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

Carmen A. Trutanich, City Attorney, Carlos De La Guerra, Assistant City Attorney, Wayne H. Song and Bruce Monroe, Deputy City Attorneys, for Defendants and Appellants.

Stone Busailah, Michael P. Stone, Muna Busailah and Melanie C. Smith for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—The City of Los Angeles (City) appeals a judgment granting a peremptory writ of mandate in favor of Robert Lanigan, a former Los Angeles police officer. The trial court reinstated Lanigan to his employment, finding a settlement of pending disciplinary charges by the City against Lanigan, pursuant to which he agreed to resign if similar misconduct charges were upheld in the future and gave up his right to pursue an administrative appeal, constituted an impermissible waiver of his rights under the Public Safety Officers Procedural Bill of Rights Act (POBRA)[1] (Gov. Code, § 3300 et seq.).[2] We hold that a waiver of POBRA's protections is permissible in the context of a settlement of a pending disciplinary action.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1. *Lanigan's First Disciplinary Charges and Settlement*

On April 28, 2006, Officer Lanigan was off duty and wrongly driving his personal vehicle in the carpool lane when a Los Angeles Unified School

[1] " '[POBRA] sets forth a list of basic rights and protections which must be afforded all peace officers (see § 3301) by the public entities which employ them. It is a catalogue of the minimum rights (§ 3310) the Legislature deems necessary to secure stable employer-employee relations (§ 3301).' " (*Crupi v. City of Los Angeles* (1990) 219 Cal.App.3d 1111, 1116 [268 Cal.Rptr. 875], quoting *Baggett v. Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874].)

[2] All further statutory references are to the Government Code unless otherwise indicated.

Police Department (LAUSPD) officer stopped him. Lanigan was investigated for and ultimately charged on April 19, 2007, with three misconduct allegations arising from his interaction with the LAUSPD officer, including harassment and refusal to comply. The chief of police (the chief) referred Lanigan to the board of rights (BOR) with a proposed penalty of termination.[3] Lanigan received notice of the proposed disciplinary action on April 9, 2007.

Before the BOR hearing commenced, Lanigan's attorney, Randall K. Quan, negotiated a settlement agreement (Agreement) with the LAPD. During the negotiations for the Agreement with the City, Quan stated to Sergeant Raymond Jatkowski, the officer in charge of the LAPD's internal affairs group's disciplinary settlement unit (DSU), that Quan's goal was to prevent Lanigan from appearing before a BOR because Quan believed the board would terminate Lanigan for his conduct. Accordingly, Quan advised Lanigan to sign the Agreement.

Under the Agreement, which had no expiration date, in exchange for the City's reduction of Lanigan's penalty to a 22-day suspension, Lanigan agreed to specific future discipline in the event of additional disciplinary charges being filed against him on the basis of a specific category of future misconduct, and agreed to waive several of his rights under POBRA.

In particular, Lanigan agreed to immediately resign from the LAPD if he "acquires any future complaints, while on and/or off duty, based on actions that occur after signing this Agreement, where he engages in any acts of harassment toward any officer(s) of an outside agency and/or fails to cooperate with any on duty officer(s) of an outside agency . . . which are sustained by the Chief of Police." Lanigan agreed to "submit a signed letter of resignation, which [would] be held in abeyance and not executed unless he violates the terms and conditions of this agreement." He confirmed he "[understood] that, should he fail to comply with the terms and conditions of

---

[3] "In the Los Angeles Police Department (LAPD), a [BOR] is an administrative [panel] charged under the Los Angeles City Charter (L.A. Charter) with the adjudication of charges of police officer misconduct. (L.A. Charter, § 1070(a).)" (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 317 [74 Cal.Rptr.3d 891, 180 P.3d 935].) The BOR is a three-person panel, composed of two LAPD (Los Angeles Police Department) commanding officers and one civilian. (L.A. City Charter, § 1070(h) (L.A. Charter).) In a BOR hearing, the LAPD has the burden of proving each charge by a preponderance of the evidence, and the accused officer has the right to appear in person (and by counsel or a representative, at the officer's expense) and defend against the charges. At the conclusion of a BOR hearing, the board must make a finding of "guilty" or "not guilty" and prescribe a penalty from a specified range of disciplinary options, including reprimand, suspension, demotion, and dismissal. (*Id.*, § 1070(n).) The chief may accept or reduce, but not increase, the BOR's recommended punishment. (*Id.*, § 1070(p).) Officers can also elect to challenge their discipline through an administrative appeal to the BOR. (*Id.*, § 1070(a).)

this agreement, his letter of resignation from the [LAPD] previously submitted shall immediately take effect." Lanigan further "accept[ed] his penalty to be served at a time determined by the Chief of Police," agreed in advance to "a factual basis for said discipline and penalty," and "acknowledge[d] that the charges sustained and the discipline imposed will be reflected in his personnel record . . . ."

Lanigan also made promises regarding future remedies, agreeing to forgo legal or administrative remedies, and "explicitly waive[d] all rights and remedies available either under the [L.A. Charter] or state law in order to effectuate this Agreement." He "release[d] and forever discharge[d] the City . . . from any and all past, present or future claims, . . . [and] damages," including "all claims or damages which he does not know or suspect to exist at the time of . . . this Agreement and Lanigan" agreed "[t]his release and discharge shall be a fully binding and complete settlement between the parties to this Agreement."

Furthermore, Lanigan confirmed "that before signing this Agreement, he has consulted with an attorney of his own choosing regarding the release of any such claims that he may have as a result of the alleged acts or omissions of the City" and "has been advised that he has twenty-one (21) days to consider this Agreement and . . . seven (7) days after the date on which he signs this Agreement within which to revoke it." Moreover, he agreed that by signing the Agreement he "knowingly and intentionally waives the . . . period for consideration . . . and the . . . revocation period." In the Agreement's last clause, Lanigan confirmed that he "had the opportunity to seek the advice of his . . . counsel of choice regarding the terms . . . , that those terms are fully understood and voluntarily accepted by each of the parties."

Lanigan signed the Agreement and resignation on February 18, 2008. At the time Lanigan signed the Agreement, Sergeant Jatkowski, who did not pressure or coerce Lanigan to sign the Agreement, did not recall Lanigan "making any statements to the effect that he felt pressured or 'under duress' or otherwise had any hesitation at all in signing the Agreement."

### 2. *Lanigan's Second Disciplinary Charge and Resignation Pursuant to the Agreement*

On September 14, 2008, Lanigan entered an emergency room seeking treatment for lacerations to his right hand. Due to his behavior at the hospital, Lanigan sustained 10 new misconduct counts as set forth in the September 10, 2009 complaint. The new complaint alleged that Lanigan entered the hospital intoxicated, unnecessarily identified himself as an officer, "terrified" other patients, and exhibited discourteous conduct that caused the hospital

staff to call the Los Angeles County Sheriff's Department (LASD). The complaint further alleged that he lied to the LASD deputies, claiming he had been dropped off at the hospital by a friend and that his keys belonged to that friend. On September 3, 2009, Deputy Chief Kirk Albanese subsequently charged Lanigan with providing false information and failing to cooperate with an LASD officer.

On September 10, 2009, the chief sustained the complaint, processed Lanigan's resignation pursuant to the Agreement, and removed Lanigan from employment.

3. *Lanigan's Petition for Peremptory Writ of Mandate*

On December 7, 2009, Lanigan filed a petition for writ of mandate to obtain judicial review of the LAPD's decision. Lanigan argued that the Agreement was unenforceable because (1) it purported to waive statutory rights under POBRA enacted for a public purpose and was therefore contrary to law and public policy, and (2) the Agreement was procedurally and substantively unconscionable. Lanigan's petition sought a peremptory writ commanding the City to reinstate him in good standing, award full backpay, and remove the record of misconduct charges and proposed penalties, or alternatively, to remand the case to the City with an order for a BOR hearing.

Lanigan argued that pursuant to Civil Code section 3513,[4] the right to an administrative appeal under POBRA was established for a public purpose and is thus not subject to a blanket waiver, relying on *Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1491–1494 [96 Cal.Rptr.3d 900] (*Farahani*) where the court held a professor could not waive the disciplinary protections of the Education Code. Lanigan further contended that the Agreement was procedurally unconscionable because the LAPD forced him to either sign the Agreement or risk termination, and that the Agreement was also substantively unconscionable because the Agreement gave the LAPD and the chief unfettered discretion to determine when the contingent event under the Agreement would occur, subjecting him to forced resignation.

In response, the City alleged that the petition should be denied because the Agreement did not contain an invalid waiver of POBRA rights, relying on *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 804 [118 Cal.Rptr.2d 167, 42 P.3d 1034] (*Madrigal*), where the court held POBRA was subject to a limited waiver. The City distinguished *Farahani* on the basis that

[4] Civil Code section 3513 provides, "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

the Education Code contained an express ban on disciplinary rights waivers, while POBRA did not. In addition, the City argued Lanigan failed to provide evidence of fraud, mistake, undue influence, or duress, and contended the Agreement was not procedurally unconscionable because Lanigan's attorney had the opportunity to negotiate the terms, and it was not substantively unconscionable because Lanigan obtained an immense benefit from the Agreement—the opportunity to save his job with certainty by eliminating the possibility of his termination after a BOR hearing.

In reply, Lanigan contended that *Farahani, supra,* 175 Cal.App.4th 1486 was controlling because both POBRA and the Education Code are laws established for a public purpose and were subject to the ban on waivers of such rights under Civil Code section 3513. Lanigan also argued that the *Madrigal, supra,* 27 Cal.4th 793 decision was limited to its facts and did not encompass an indefinite waiver of the right to appeal disciplinary action that had not yet occurred. Finally, Lanigan argued that the Agreement was not enforceable because it was not made with sufficient awareness of the likely consequences.

The trial court granted Lanigan's petition, reasoning that Lanigan's situation was indistinguishable from *Farahani, supra,* 175 Cal.App.4th 1486 and held that the Agreement was unenforceable and void. As a result of its ruling, the court did not reach the issues of whether the Agreement was signed involuntarily and whether the Agreement was unconscionable. The court issued a writ ordering the City to set aside its acceptance of Lanigan's resignation, reinstate him to his position as an officer in good standing, and take further action as enjoined by law.[5] This appeal followed.

## DISCUSSION

The City contends that (1) the Agreement's waiver of POBRA rights is valid, (2) the Agreement's release of all claims is enforceable because it was not the product of fraud, mistake, undue influence, or duress, and (3) the Agreement is not unconscionable. Lanigan contends the Agreement is unenforceable because POBRA rights are not waivable; the release is not enforceable because the Agreement is invalid as a matter of law; and it is unconscionable based on the parties' unequal bargaining positions and because the Agreement improperly gave the chief unfettered discretion to terminate him if the condition were triggered. We find that the Agreement is enforceable, and reverse.

[5] The trial court stated that the City's request for a statement of decision was not applicable because the court made no factual determinations, but that its tentative ruling would constitute a statement of decision if one were later deemed necessary.

I. *Standard of Review*

"Section 1094.5 of the Code of Civil Procedure provides the basic framework by which an aggrieved party to an administrative proceeding may seek judicial review of any final order or decision rendered by a state or local agency." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 137 [93 Cal.Rptr. 234, 481 P.2d 242], fn. omitted.) Section 1094.5, subdivision (a) applies to review of "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." Administrative mandamus is properly employed when a hearing is required by law, even if the hearing is not held. (*Civil Service Com. v. Velez* (1993) 14 Cal.App.4th 115, 118 [17 Cal.Rptr.2d 490].)

The validity of a final administrative decision of a public entity employer, including the LAPD, is reviewable by a petition for administrative mandamus under Code of Civil Procedure section 1094.5. (See *Gales v. Superior Court* (1996) 47 Cal.App.4th 1596, 1603 [55 Cal.Rptr.2d 460] [holding Pasadena police officer was required to file mandamus petition pursuant to Code Civ. Proc., § 1094.5 to challenge final administrative decision to demote him]; *Moore v. City of Los Angeles* (2007) 156 Cal.App.4th 373, 382 [67 Cal.Rptr.3d 218].) Under administrative mandamus, we exercise our independent judgment as to questions of law, and apply the substantial evidence test to questions of fact. (*Moore*, at p. 380; *Bixby v. Pierno, supra*, 4 Cal.3d at p. 137.)[6]

II. *A Waiver of POBRA's Protections Is Permissible in the Context of a Settlement of a Pending Disciplinary Action*

POBRA explicitly declares that its purpose is to promote "effective law enforcement" by maintaining "stable employer-employee relations" in law enforcement agencies. (§ 3301.) POBRA, initially enacted in 1976 (Stats. 1976, ch. 465, § 1, p. 1202), sets forth a list of "basic rights and protections which must be afforded all peace officers (see § 3301) by the public entities which employ them," and is a catalog of "the minimum rights (§ 3310) the Legislature deems necessary to secure stable employer-employee relations" (*Baggett v. Gates, supra*, 32 Cal.3d at p. 135). "The various procedural protections provided by POBRA 'balance the public interest in

[6] Lanigan brought his petition under both traditional mandamus (Code Civ. Proc., § 1085) and administrative mandamus (Code Civ. Proc., § 1094.5). Even if he had improperly brought his petition solely as a traditional mandamus proceeding, we would have treated it as if it had been properly brought under Code of Civil Procedure section 1094.5. (See *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1125 [272 Cal.Rptr. 273].)

maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment.' [Citation.]" (*Mays v. City of Los Angeles, supra*, 43 Cal.4th at p. 320.) These rights include limits on and guidelines for investigations and interrogations of public safety officers in connection with disciplinary proceedings (§ 3303), the right to an administrative appeal and a one-year statute of limitations for investigations (§ 3304), the right to notification of adverse comments placed in his or her personnel file and the right to comment thereon (§ 3305), the right to inspection of personnel files (§ 3306), the right to refuse to submit to a lie detector test (§ 3307), and the right to the protections of POBRA (§ 3309.5, subd. (a)).

"Waiver is the intentional relinquishment of a known right after knowledge of the facts." (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 572 [150 P.2d 422].) Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Nonetheless, statutory benefit may be waived if (1) the statute does not prohibit waiver, (2) the statute's public purpose is incidental to its primary purpose, and (3) the waiver does not seriously undermine any public purpose the statute was designed to serve. (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 426 [2 Cal.Rptr.3d 699, 73 P.3d 554].)

*Madrigal, supra*, 27 Cal.4th 793 held that the provisions of POBRA are not subject to a blanket waiver because POBRA was established for a public purpose, recognizing " 'labor unrest and work stoppage among police officers pose an obvious threat to the health, safety and welfare of the citizenry . . . .' " (27 Cal.4th at p. 804.) In *Madrigal*, the Supreme Court evaluated the validity of an officer's preemployment waiver of his right under POBRA to view confidential documents prepared in connection with a routine background investigation of the officer who was transitioning from one law enforcement agency to another. (27 Cal.4th at p. 796.) The court concluded such a waiver was permissible and consistent with Civil Code section 3513 because the waiver was limited to the right to view background files by an employee who was already a peace officer at the time of the waiver. (27 Cal.4th at p. 806.)

The officer in *Madrigal, supra*, 27 Cal.4th 793 obtained employment with the County of Riverside as a lateral placement when his prior employer, the City of Perris, discontinued its police department and contracted with the county for law enforcement within its boundaries. (*Id.* at p. 796.) In connection with his change in employment, the officer waived his right to view his background report prepared by the county; this release expired after one year. Madrigal also signed a document entitled "Waiver of Background Investigation Prior to Hire," in which he acknowledged that his employment with the

county was contingent upon completion of the background investigation, and if any information uncovered in the investigation was negative, the officer's employment would be terminated. (*Id.* at p. 797.) As a result of its investigation, the county dismissed the officer without giving him reasons for its action. (*Ibid.*)

The court reasoned that "[i]f law enforcement agencies could routinely require applicants to waive their prospective rights under [POBRA] as a condition of employment, these employers could render [POBRA] nugatory vis-à-vis all new peace officers, essentially forcing these officers to opt out of the Act before they even begin work. That result would be inconsistent with Civil Code section 3513." (*Madrigal, supra*, 27 Cal.4th at p. 805.) However, to be enforceable, the waiver " 'must be a voluntary and *knowing* act done with *sufficient awareness* of the relevant circumstances and *likely consequences*.' " (*Id.* at p. 806.)

*Madrigal, supra*, 27 Cal.4th 793 reasoned the officer's waiver of POBRA was permissible because it was (1) limited to the officer's background investigation files, and (2) concerned an officer who was on probationary status. (27 Cal.4th at p. 806.) "[A] waiver of this kind raises a different issue [than a blanket waiver]. Section 1031 requires peace officers to meet certain 'minimum standards' including being 'of good moral character, as determined by a thorough background investigation.' (*Id.*, subd. (d).) If the minimum standards are to have any real meaning, a candidate has to meet the standards *prior to* becoming a peace officer. In other words, a law enforcement agency cannot *first* grant peace officer status to a civilian, including full peace officer powers, and *then* conduct its background investigation. Therefore, we think a waiver of this kind should only be sought in the case of an officer, like Madrigal, who is already a peace officer at the time of the waiver and is merely applying to transfer from one agency to another . . . ." (*Ibid.*)

*Madrigal, supra*, 27 Cal.4th 793 stands for the proposition that under certain circumstances, a peace officer protected by POBRA may waive those protections consistent with Civil Code section 3513. While *Madrigal* did not establish the precise boundaries of permissible waivers of POBRA, other cases have permitted a waiver of statutory and other protections where the waiver is obtained as a quid pro quo for settlement of disciplinary charges.[7]

[7] For these reasons, *Farahani, supra*, 175 Cal.App.4th 1486 is inapplicable. There, the court held a predisciplinary waiver of a professor's statutory due process rights under the Education Code was unenforceable. (*Id.* at p. 1489.) Relevant there, Education Code section 87485 provides "any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void." (*Ibid.*) Here, POBRA contains no such provision; if it did, Lanigan's waiver would be invalid.

In *Alhambra Police Officers Assn. v. City of Alhambra Police Dept.* (2003) 113 Cal.App.4th 1413 [7 Cal.Rptr.3d 432] (*Alhambra Police Officers Assn.*), an Alhambra police officer was charged with misconduct arising out of the investigation of another officer. After an administrative hearing, in exchange for negotiated discipline, the officer gave up his right to an appeal before the city's civil service commission. His agreement included findings that the disciplinary charges were sustained and that he agreed to the discipline imposed. (*Id.* at pp. 1418–1419.) In sum, the officer negotiated a settlement by which he received less severe discipline in exchange for admitting misconduct and waiving his right to appeal the discipline to the civil service commission. (*Id.* at p. 1420.)

The officer later sought to set aside the discipline on the grounds of, among other things, violations of POBRA. (*Alhambra Police Officers Assn., supra,* 113 Cal.App.4th at p. 1419.) The court refused to set aside the officer's discipline. "[The police officer] avoided the risk of a more severe penalty—dismissal—by settling and accepting lesser discipline. He may not, through an action under [POBRA], avoid the discipline to which he consented." (*Id.* at p. 1421; see also *Zazueta v. County of San Benito* (1995) 38 Cal.App.4th 106 113 [44 Cal.Rptr.2d 678] (*Zazueta*) [officer who agreed to arbitration of disciplinary proceedings may not obtain judicial review through petition for writ of mandate]; *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 133–134 [115 Cal.Rptr.2d 294] (*Stermer*).)

In *Zazueta, supra,* 38 Cal.App.4th 106, a sheriff engaged in sexual harassment and was terminated. The county's termination notice advised him that he could either appeal to the board of supervisors, or submit to an arbitration pursuant to a memorandum of understanding (MOU) between the county and the sheriff's department. (*Id.* at p. 109.) The sheriff elected to submit the matter to arbitration, and in the arbitration proceedings contended the sheriff's department had violated POBRA during its investigation of him. The arbitrator upheld the sheriff's termination, and he sought writ review in the superior court to overturn the arbitration findings pursuant to an exception in the MOU, and contended that the narrow circumstances permitting review of an arbitrated termination was a contract of adhesion. (38 Cal.App.4th at pp. 109–111.) *Zazueta* denied relief, finding that the sheriff elected not to pursue his administrative remedies by appealing to the board of supervisors. "[P]etitioner chose the forum in which to resolve his dispute with the County. Had he wished to submit resolution of his statutory rights to judicial review, he could have done so." (*Id.* at pp. 111–112.) Further, *Zazueta* found that the sheriff waived any deficiencies in the MOU by failing to raise them in the arbitration. (*Ibid.*)

Similarly, in *Stermer, supra*, 95 Cal.App.4th 128, a dentist stipulated to a settlement of pending disciplinary charges before the Board of Dental Examiners arising from misdemeanor domestic violence offenses by admission of the charges, acceptance of revocation of his license, and agreement not to challenge the settlement in the superior or appellate court. (*Id.* at p. 131.) After the dentist's conviction was vacated in a habeas corpus proceeding and the Board of Dental Examiners refused to vacate his discipline, he sought writ review of the stipulated revocation of his license. (*Id.* at pp. 131–132.) *Stermer* refused to set the discipline aside on the grounds of mistake of fact. The court found that at the time of the stipulation, the conviction existed and its later vacation by writ of habeas corpus did not constitute a mistake of fact. Instead, the dentist received the full benefit of his bargain: "[He] proceeded with the settlement, despite the rejection of his proposal that the stipulation and order be deemed void if the habeas corpus petition was granted. By doing so, he avoided the hearing, the allegations of drug use, and the possibility of a more severe penalty." (*Id.* at p. 133.)

These cases support the principle that peace officers protected by POBRA may waive those protections when faced with disciplinary proceedings, provided that any settlement is a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences. (*Madrigal, supra*, 27 Cal.4th at p. 806.) We conclude that here, the Agreement meets the requirements of *Madrigal.*

First, Lanigan's waiver of the protections of POBRA did not contravene Civil Code section 3513. Lanigan was not faced with a preemployment, blanket waiver of POBRA rights. Like the officer in *Madrigal*, Lanigan was "already a peace officer at the time of the waiver . . . ." (*Madrigal, supra*, 27 Cal.4th at p. 806.) But the City's position here is stronger than that of the county in *Madrigal* because Lanigan made his waiver postemployment, and not as a condition of being hired. Indeed, in the context of disciplinary proceedings, Lanigan was faced with a choice: appear before the BOR, and in his attorney's opinion face certain termination, or sign the Agreement. By signing the Agreement, Lanigan enjoyed the benefits of continued employment, subject only to the happening of a future contingent event that was within his control. While he enjoyed such continued employment, Lanigan never sought to void the Agreement. Thus, Lanigan's only complaint can be that he engaged in conduct triggering the condition of the Agreement requiring him to resign, and he may not now avoid the discipline to which he consented.

Second, the undisputed facts show that Lanigan's waiver was knowingly made with sufficient knowledge of the relevant circumstances and likely consequences. Lanigan was aware that if he did not sign the Agreement, he

would appear before a BOR. Although termination as a result of such an appearance was not a certainty, it was in Quan's opinion highly likely. On the other hand, by signing the agreement Lanigan was aware he could enjoy continued employment with the LAPD, but only on condition that he accept resignation and loss of certain POBRA rights as a consequence of his conduct. By signing the Agreement he acknowledged that he was doing so voluntarily and with a full understanding of its consequences.

III. *The Agreement Was Not the Product of Fraud, Mistake, Undue Influence, or Duress*

Settlements of disciplinary proceedings are binding in the absence of a showing of fraud, mistake, undue influence, or duress. (*Alhambra Police Officers Assn., supra*, 113 Cal.App.4th at p. 1420; *Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1366 [53 Cal.Rptr.2d 481] [written release valid unless obtained by fraud, deception, duress, undue influence, or misrepresentation].) The doctrine of economic duress can form a basis for rescission of a settlement agreement. (See *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158–1159 [204 Cal.Rptr. 86].) However, "the courts, in desiring to protect the freedom of contracts and to accord finality to a privately negotiated dispute resolution, are reluctant to set aside settlements and will apply 'economic duress' only in limited circumstances and as a 'last resort.' " (*San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1058 [37 Cal.Rptr.2d 501], quoting *Rich*, at pp. 1158–1159.) "When a party pleads economic duress, that party must have had no 'reasonable alternative' to the action it now seeks to avoid (generally, agreeing to contract). If a reasonable alternative was available, and there hence was no compelling necessity to submit to the coercive demands, economic duress cannot be established." (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 644 [76 Cal.Rptr.2d 615].)

Here, Lanigan cannot establish he had no reasonable alternative to signing the Agreement. Although he contends he signed the Agreement under fear of losing his career and livelihood, Lanigan could have exercised his right to appear before a BOR. Although Quan believed Lanigan would have been terminated had he appeared before the BOR, Lanigan's termination was not a certainty. Under these circumstances, he cannot show duress. Further, Lanigan acknowledged in signing the Agreement he had "twenty-one (21) days to consider this Agreement" and "seven (7) days after the date on which he sign[ed] . . . within which to revoke it." By signing the Agreement, he "knowingly and intentionally waive[d] the . . . period for consideration . . . and the . . . revocation period." Lanigan signed the Agreement after five days and did not revoke it within the seven-day period.

IV. *The Agreement Is Not Unconscionable*

Settlement agreements are governed by contract principles. (*Nicholson v. Barab* (1991) 233 Cal.App.3d 1671, 1681 [285 Cal.Rptr. 441]; *Roe v. State of California* (2001) 94 Cal.App.4th 64, 73 [113 Cal.Rptr.2d 900].) A contract or contract term is unenforceable if it is "unconscionable." (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 145 [67 Cal.Rptr.3d 120].) The unconscionability of a contract is a question of law, and where, as here, there are no factual disputes the appellate court reviews the issue de novo. (*Id.* at p. 144.) The court determines unconscionability with reference to the time the contract is entered into, rather than in light of subsequent events. (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 116 [12 Cal.Rptr.3d 663].)

An unconscionable contract " 'has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression' " or ' "surprise" ' due to unequal bargaining power, [and] the latter on ' "overly-harsh" ' or ' "one-sided" ' results." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) Both procedural and substantive unconscionability must be present for a contract to be unenforceable, but each need not be present in the same degree. Rather, the court invokes a sliding scale: the more substantively unconscionable the contract, the less evidence of procedural unconscionability is necessary to conclude that the contract is unenforceable, and conversely, the more procedural unconscionability is present, the less substantive unconscionability is required to justify such a determination. (*Ibid.*)

A. *Lack of Procedural Unconscionability*

Procedural unconscionability focuses on the elements of oppression and surprise. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160 [30 Cal.Rptr.3d 76, 113 P.3d 1100].) Oppression occurs where there is an inequality of bargaining power which results in a lack of real negotiation and an absence of meaningful choice. Surprise involves the extent to which the terms of the bargain are hidden in a verbose printed form drafted by the party in a superior bargaining position. (*Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165 [22 Cal.Rptr.3d 189].) As a result, procedural unconscionability generally takes the form of a contract of adhesion, which is " 'a standardized contract, which, imposed and drafted by a party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz, supra*, 24 Cal.4th at p. 113.)

Here, the Agreement was not procedurally unconscionable because it was not adhesive, oppressive, or a surprise to Lanigan. Lanigan's attorney had the

opportunity to negotiate the contract and its terms. Sergeant Jatkowski stated that although "[s]ettlement agreements [between an officer and the LAPD] normally require the officer to waive all rights to contest the validity of the agreement through the legal system," "[s]ettlement agreements are *not* simply presented to officers for signature in 'take it or leave it' fashion" and "are often negotiated." Indeed, "if officers or their representatives have good reason for requesting a certain provision or deleting another, the LAPD will sometimes agree to the change(s)."

Further, Lanigan's bargaining strength was equal to the City's. Not only was Lanigan represented by an attorney of his choosing, Lanigan had an alternative means of maintaining his job—an appearance before a BOR. Finally, the Agreement could not have surprised Lanigan. Surprise involves the extent to which a contractual term is hidden in a document. (*Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 1000 [39 Cal.Rptr.2d 506].) The provisions that Lanigan must resign and forgo legal or administrative remedies if he were to again harass an outside agency officer, fail to cooperate with an outside agency officer, or fail to comply with a written direct order from his commanding officer were fully disclosed to Lanigan. The provisions were not disguised or hidden; rather, they were available in full to Lanigan in the agreement regarding proposed discipline and concisely summarized at the top of the resignation form. Moreover, the provisions were specifically brought to the attention of and discussed by Lanigan's attorney during his negotiations with the LAPD.

B. *Lack of Substantive Unconscionability*

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results. (*Armendariz, supra*, 24 Cal.4th at p. 114.) We consider whether contractual provisions "reallocate[] risks in an objectively unreasonable or unexpected manner." (*Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1539 [5 Cal.Rptr.3d 835].)

The Agreement was not unfairly one sided. The Agreement protected, rather than cost, Lanigan's job. Through the Agreement, Lanigan gained full protection by eliminating the possibility of immediate termination before a BOR. This gain for Lanigan constituted a corresponding cost for the City, which at that time gave up the opportunity to proceed administratively against an accused officer. By the time Lanigan filed his petition, he had already received the full benefit of the bargain, namely, he had retained his job for several more years and had the opportunity, through his own conduct, to avoid triggering the LAPD's discretionary power to terminate him for future misconduct.

Moreover, although the LAPD could hold Lanigan's letter of resignation indefinitely and had substantial discretion in exercising the termination clause, the LAPD held no Damoclean sword over Lanigan. While we acknowledge that in theory under the terms of the Agreement that the LAPD could wait until the eve of Lanigan's retirement to terminate him, creating the potential for abuse, because the Agreement was freely negotiated, this ameliorates any potential substantive unconscionability based upon this term.

## DISPOSITION

The judgment granting the writ of mandate is reversed. The superior court is directed to set aside its judgment of August 24, 2010, holding that the settlement agreement was unenforceable and void under *Farahani, supra*, 175 Cal.App.4th 1486, and enter a new and different judgment in favor of the City of Los Angeles, holding that the settlement agreement is valid and enforceable and denying the petition for writ of mandate. Appellants are to recover costs on appeal.

Mallano, P. J., and Rothschild, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 11, 2012, S197858.