Filed 4/12/18

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ARTHUR OCHOA,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>COUNTY OF KERN et al.,<br><br>    Defendants and Respondents. | F073163<br><br>(Super. Ct. No. S1500CV283335)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Silver, Hadden, Silver & Levine; Rains Lucia Stern St. Phalle & Silver, Steven N. Welch, and Brian P. Ross for Plaintiff and Appellant.

Mark L. Nations, Interim County Counsel, Margo A. Raison, Chief Deputy County Counsel, and Phillip T. Jenkins, Deputy County Counsel for Defendants and Respondents.

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.b. of the Discussion.

**INTRODUCTION**

Appellant Arthur Ochoa, formerly employed by the Kern County Sheriff's Office (KCSO) as a deputy sheriff, petitioned for a peremptory writ of mandate commanding respondents County of Kern and Kern County Sheriff Donny Youngblood to set aside his termination and other extraordinary relief to remedy a violation of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.).[1]  Ochoa claimed KCSO—in contravention of section 3304, subdivision (d)—failed to complete an administrative investigation of his alleged misconduct and notify him of the proposed disciplinary action within one year of the public agency's discovery by a person authorized to initiate said investigation.  The superior court entered an order and judgment denying the petition.

On appeal, Ochoa reiterates his termination was time barred because a KCSO sergeant initiated an investigation of his alleged misconduct on March 25, 2013, and an internal affairs investigator notified him of the proposed termination on August 11, 2014.  Respondents assert the one-year statute of limitations period in section 3304, subdivision (d)(1), does not commence until an internal affairs investigation is authorized.  Since the sergeant who initiated the investigation on March 25, 2013, was not authorized by department policy to initiate an internal affairs investigation, his investigation did not start the one-year limitations period.  They also argue two separate criminal investigations of the misconduct tolled the one-year limitations period.  In the published portion of this opinion, we conclude section 3304, subdivision (d)(1), requires the investigation to be completed within one year of the public agency's discovery by a

---

[1]  Henceforth, we refer to this statute by the commonly used acronym POBRA. (See, e.g., *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313 (*Mays*); *Neves v. Department of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 61.)

In addition, subsequent statutory citations refer to the Government Code unless otherwise indicated.

person authorized to initiate an investigation of the allegation of misconduct; although the sergeant could not initiate an internal affairs investigation, he was "a person authorized to initiate an investigation" of the allegation within the meaning of that statute. We, therefore, agree with Ochoa the one-year limitations period commenced March 25, 2013. In the unpublished portion, we conclude KCSO acted in a timely manner because the first criminal investigation sufficiently tolled the limitations period. The order and judgment denying Ochoa's petition are affirmed.

### FACTUAL AND PROCEDURAL HISTORY[2]

On March 22, 2013, Priscilla S. informed Deputy Chaidez that Ochoa harassed her. On the same day, Chaidez submitted an interoffice memorandum documenting the allegation to Sergeant Bittle, Ochoa's superior.

On March 25, 2013, Bittle received Chaidez's memorandum and "started an investigation" "to determine what the nature of the complaint was." Between March 25 and March 27, 2013, he tried to contact Priscilla several times without success. On March 27, 2013, Bittle submitted an interoffice memorandum concerning Priscilla's allegation and his attempts to contact her to Commander Hansen.

On April 8, 2013, Bittle spoke to Priscilla and her brother. Priscilla stated Ochoa made unwanted sexual advances toward her for almost four years. Priscilla's brother stated Ochoa punched him in the face a few days earlier. Bittle detailed the conversation in an April 8, 2013, interoffice memorandum to Hansen.

On April 9, 2013, in KCSO case No. SR13-10251, Senior Deputy Rutledge initiated a criminal investigation of Ochoa "for assault under color of authority and annoying/molesting a child under the age of 18 years old."

---

**2** The record on appeal includes the parties' agreed statement. (See Cal. Rules of Court, rule 8.134.) "Facts recited in an agreed statement take the place of factual findings, and bind the parties." (*Institoris v. City of Los Angeles* (1989) 210 Cal.App.3d 10, 17.)

On May 6, 2013, Chief Deputy Zimmerman signed a KCSO "Personnel Complaint" authorizing internal affairs to investigate Priscilla's harassment claim against Ochoa. Senior Deputy Levig was appointed to conduct this investigation.

On June 13, 2013, Rutledge asked the Kern County District Attorney (District Attorney) to file criminal charges against Ochoa in KCSO case No. SR13-10251, namely (1) assault by an officer under color of authority (Pen. Code, § 149); (2) sexual battery (*id.*, § 243.4, subd. (a)); (3) preventing or dissuading a witness or victim (*id.*, § 136.1, subd. (a)(1)); and (4) annoying or molesting a child under 18 years of age (*id.*, § 647.6, subd. (a)(1)). On June 21, 2013, the District Attorney rejected the request but returned the case "for further investigation."

Between June 21, 2013, and July 2, 2013, Rutledge "learned facts related to an alleged violation of Penal Code [s]ection 502, unauthorized access to computers, computer systems and computer data, specifically [Ochoa]'s access of the [Criminal Justice Information System, the California Law Enforcement Telecommunications System, or the Department of Motor Vehicles] database information regarding [Priscilla] . . . on January 19, 2013." On July 2, 2013, Rutledge resubmitted his request for a criminal complaint in KCSO case No. SR13-10251 but did not append a charge of unauthorized access to computers, computer systems, and computer data. He "did not conduct any further investigation regarding the allegations in [KCSO] case [No.] SR13-10251 after July 2, 2013," and "did not conduct any further investigation regarding the alleged Penal Code section 502 violation from July 2, 2013[,] through June 25, 2014."

On July 30, 2013, in connection with KCSO case No. SR13-10251, Deputy District Attorney Kohler reviewed Ochoa's personnel file. Thereafter, on an unspecified date, she assigned District Attorney Investigator Caldas to look into the allegations more thoroughly. After Caldas's investigation, Kohler met with the District Attorney and an Assistant District Attorney. The District Attorney decided not to prosecute Ochoa.

On June 25, 2014, Sergeant Simpson ordered Rutledge, his subordinate, to investigate Ochoa's potential violation of Penal Code section 502 in KCSO case No. SR14-16963. On July 1, 2014, Rutledge asked the District Attorney to charge Ochoa with knowingly and without permission accessing a computer, computer system, or computer network (Pen. Code, § 502, subd. (c)(7)). On July 7, 2014, the District Attorney rejected the request because the applicable statute of limitations had run.

On August 11, 2014, Levig served Ochoa with a "Notice of Proposed Disciplinary Action—Termination," which cited numerous violations of Civil Service Commission Rules and KCSO Policies and Procedures.[3] Following a *Skelly*[4] hearing, Ochoa was terminated effective October 7, 2014.

On October 28, 2014, Ochoa petitioned for a peremptory writ of mandate and other extraordinary relief pursuant to Code of Civil Procedure section 1085 and section 3309.5, respectively.[5] On November 12, 2015, the court conducted an oral hearing on the petition.

---

[3] The notice specified Ochoa infringed rules, policies, and/or procedures pertaining to the following: (1) "Conduct unbecoming an employee in the public service"; (2) "Disorderly or immoral conduct"; (3) "Incompetence or inefficiency"; (4) "Neglect of duty"; (5) "Violation of any lawful or reasonable regulation or order"; (6) "Dishonesty"; (7) "Duties of Personnel – All Members"; (8) "Duties of Personnel – Deputy Sheriffs"; (9) "Rules of Conduct – Law Enforcement Personnel"; (10) "Use of Mobile Data Computers"; and (11) "Use of Computer Systems and Data."

[4] *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194.

[5] We note Ochoa petitioned for a writ of ordinary mandamus (Code Civ. Proc., § 1085) rather than a writ of administrative mandamus (*id.*, § 1094.5).

" 'The proper method of obtaining judicial review of most public agency decisions is by instituting a proceeding for a writ of mandate.' [Citation.] Two such writs are provided by statute: (1) ordinary mandamus [citation] and (2) administrative mandamus [citation]. Challenge of an agency's action or decision via proceeding for a writ of administrative mandamus is available if the decision was 'made as a result of a proceeding in which by law a hearing is required to be given . . . .' [Citations.]" (*Nathan G. v. Clovis Unified School Dist*. (2014) 224 Cal.App.4th 1393, 1399-1400, fn. omitted.) "Administrative mandamus is properly employed when a hearing is required by law, even

Bittle testified he "was not authorized to initiate an internal affairs investigation." Nonetheless, as a sergeant, he "ha[s] to look into . . . allegations to find out what they were all about." Bittle stated he had "the ability to investigate subordinates" and "discipline [them] for [policies and procedures] violation[s]" but "would not impose any discipline beyond a written reprimand." In March 2013, in an unrelated case, he investigated Ochoa for a possible Policies and Procedures violation and issued "Documented Oral Counseling," which "is considered in an employee's annual performance review."

Simpson testified a sergeant "did not have the authority to initiate an internal affairs investigation" and "only the Sheriff, the Undersheriff, or Chief Deputies can authorize the initiation of an internal affairs investigation." "[H]is authority was limited to gathering enough facts to make his chain of command aware of the nature of the allegations."

Levig testified "no one below the rank of a Chief Deputy has the ability to authorize an administrative investigation."

Zimmerman testified he authorized an internal affairs investigation on May 6, 2013, and "only a Chief Deputy can initiate an internal affairs investigation of a deputy" pursuant to Policies and Procedures Nos. D-300 (Employee Discipline – Misconduct)[6]

---

if the hearing is not held." (*Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1029 (*Lanigan*).) Under POBRA, "[n]o punitive action . . . shall be undertaken by any public agency . . . without providing the public safety officer with an opportunity for administrative appeal." (§ 3304, subd. (b); see *Otto v. Los Angeles Unified School Dist.* (2001) 89 Cal.App.4th 985, 996 (*Otto*) [POBRA mandates an evidentiary hearing before a neutral fact finder in which the officer may challenge any punitive action].)

Although Ochoa "improperly brought his petition . . . as a traditional mandamus proceeding, we [may] . . . treat[] it as if it had been properly brought under Code of Civil Procedure section 1094.5." (*Lanigan*, *supra*, 199 Cal.App.4th at p. 1029, fn. 6; see *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1125.) We choose to do so.

**6**     Policies and Procedures No. D-300 reads in pertinent part:

6.

and D-600 (Citizen Complaint Procedure)[7].  A sergeant, on the other hand, "cannot initiate an internal affairs investigation."  Instead, a sergeant "can conduct fact-finding if

"**PROCEDURE B – SUPERVISOR INITIATED COMPLAINTS**

"A supervising employee who becomes aware of misconduct on the part of any member will:

- "● Prepare a confidential memo, including:
  - "○ The rules, regulations, policies or orders applicable to the incident.
  - "○ A description of what actions he or she took (if any) concerning the incident.
- "● Forward the confidential memo and all supporting documentation and information directly to his or her commander in a sealed envelope.  In cases where the supervising employee is of the rank of commander or higher, the documentation will be forwarded to the next highest level.

"The affected division commander will:

- "● Evaluate the nature of the complaint and determine if the situation may be appropriately handled at the supervisory level.  If the situation is of a more serious nature and it appears discipline may be warranted, forward the documentation to his or her chief deputy.

"**PROCEDURE C – CASE INVESTIGATIONS**

"The chief deputy, upon receiving a personnel complaint, will evaluate the complaint and determine if the case will be:

- "● Returned to the appropriate division for a pre-investigation
- "● Concluded as an 'Adverse Comment' only
- "● Eligible for a Pre-disposition Settlement Agreement (PDSA)
- "● Handled as a division level investigation
- "● Handled as an Internal Affairs investigation

"The chief deputy will document his or her decisions on the complaint form and return the entire package to the Personnel Division Commander."

[7]     Policies and Procedures No. D-600 reads in pertinent part:

"**PROCEDURE**

there is an allegation" to "determine[] if the allegation is criminal or administrative in nature." Zimmerman noted "[KCSO] encourages complaints to be handled at the lowest possible level" and acknowledged (1) "a [s]ergeant has the ability to give a written reprimand to a subordinate deputy"; and (2) "a reprimand does not require that an internal affairs investigation was initiated." However, "a [s]ergeant cannot take disciplinary action against a subordinate when there are serious or criminal allegations."

Kohler testified she "d[id] not remember the specific date that Caldas was assigned" to investigate KCSO case No. SR13-10251 and "did not know the specific date of the final rejection of [said] case." She recalled (1) she assigned Caldas "[p]retty quickly" after she reviewed Ochoa's personnel file on July 30, 2013; and (2) Caldas "took about a month to get in contact with [Priscilla]." Kohler remarked Caldas "took . . . anywhere from two or three weeks to a month or two to complete . . . [an]

---

"Any member of the Sheriff's Office who is given a formal citizen's complaint will:

- "● Accept the complaint as written by the complainant;

- "● Give a copy to the complaining party of his or her own statements at the time the complaint is filed. [¶] . . . [¶]

- "● Forward the complaint form in a sealed envelope to the Undersheriff or his designee."

"The Undersheriff or Chief Deputy, upon receiving a personnel complaint, will:

- "● Determine if an Internal Affairs investigation is warranted;

- "● Determine if the investigation, if any, will be done by the Internal Affairs Section or be returned to the appropriate division for investigation;

- "● Forward the entire package to the Human Resources Division Commander with authorization for an investigation to be conducted;

- "● Monitor or cause to be monitored the progress of the investigation."

8.

investigation." After receiving the results of Caldas' investigation, Kohler met with District Attorney Green and Assistant District Attorney Spielman and they decided to forgo criminal prosecution. This meeting took place "a month or two" after July 30, 2013.

Caldas testified he "was asked by . . . Kohler to attempt to locate and talk to [Priscilla] regarding an investigation of [Ochoa]" sometime in 2013. He contacted Priscilla, who told him "she did not want to cooperate any further." Caldas informed Kohler about the exchange "two weeks" after "Kohler requested that he contact [Priscilla]." He "did not conduct any other work . . . other than contacting [Priscilla] one time."

Thereafter, the court denied Ochoa's petition. It held:

> "[Ochoa] has not met his burden of proving that the August 11, 2014, notice of proposed disciplinary action was served outside the one-year limitations period set forth in . . . section 3304[, subdivision ](d)(1).

> "The criminal investigation regarding [KCSO case No.] SR13-10251 commenced April 9, 2013. The administrative investigation commenced May 6, 2013; . . . Bittle was not authorized to initiate an investigation within the meaning of . . . [section] 3304[, subdivision ](d)(1). The limitations period for the administrative action was tolled during the criminal investigation regarding [KCSO case No.] SR13-10251.

> ". . . Kohler reviewed [Ochoa]'s personnel file on July 30, 2013, as part of the ongoing criminal investigation. A preponderance of the evidence shows that Kohler requested additional investigation after she reviewed . . . [Ochoa]'s file, and . . . Caldas undertook that criminal investigation. Kohler estimated the additional investigation took from one to two months, to a little less than a month. Caldas recalls that his investigation took two weeks. Kohler also met with her superiors to discuss the possible criminal filing before it was finally rejected; the date of that meeting is unknown, but it was part of the criminal investigation regarding [KCSO case No.] SR13-10251 after Kohler reviewed the personnel file. [Ochoa] has not shown that the criminal investigation concerning [KCSO case No.] SR13-10251 concluded on or before August 11, 2013. A preponderance of the evidence tends to show the

9.

criminal investigation regarding [KCSO case No.] SR13-10251 concluded after August 11, 2013.

"In addition, a preponderance of the evidence shows that a criminal investigation regarding [KCSO case No.] SR14-16963 took place between June 25, 2014, and July 7, 2014 (12 days). That criminal investigation was undertaken in good faith and would have extended the limitations period, but as stated above, the criminal investigation regarding [KCSO case No.] SR13-10251 concluded after August 11, 2013.

"[Ochoa] has not met his burden of proving the administrative action is barred by the limitations period."

**DISCUSSION**

**I.     POBRA overview.**

"Initially enacted in 1976 [citation], POBRA 'sets forth a list of basic rights and protections which must be afforded all peace officers [citation] by the public entities which employ them. It is a catalogue of the minimum rights [citation] the Legislature deems necessary to secure stable employer-employee relations [citation].' [Citations.]" (*Mays*, *supra*, 43 Cal.4th at p. 320.) "These rights include limits on and guidelines for investigations and interrogations of public safety officers in connection with disciplinary proceedings (§ 3303), the right to an administrative appeal and a one-year statute of limitations for investigations (§ 3304), the right to notification of adverse comments placed in his or her personnel file and the right to comment thereon (§ 3305), the right to inspection of personnel files (§ 3306), the right to refuse to submit to a lie detector test (§ 3307), and the right to the protections of POBRA (§ 3309.5, subd. (a))." (*Lanigan*, *supra*, 199 Cal.App.4th at p. 1030.) "When a law enforcement agency investigates alleged misconduct by an officer employee, the procedural protections in [POBRA] balance the public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment." (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 909 (*Jackson*); see *Mays*, *supra*, at p. 320 [citing *Jackson* with approval].)

10.

"One protection codified in section 3304 is the speedy adjudication of conduct that could result in discipline." (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1075 (*Breslin*).) Section 3304, subdivision (d)(1), provides in pertinent part:

> "[N]o punitive action[8] . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2). The public agency shall not be required to impose the discipline within that one-year period." (See *Mays*, *supra*, 43 Cal.4th at pp. 321-322 ["Not only completion of the investigation, but also the requisite notification to the officer, must be accomplished within a year of discovery of the misconduct."].)

"[T]he apparent purpose of [section 3304,] subdivision[ (d)(1)], . . . is to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but will know within one year of the agency's discovery of the officer's act or omission that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline." (*Mays*, *supra*, 43 Cal.4th at p. 322.)

Section 3304 "allows for tolling or extension of the one-year limitations period under specified circumstances." (*Breslin*, *supra*, 146 Cal.App.4th at p. 1075.) For instance, subdivision (d)(2)(A), provides:

> "If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period."

---

[8] A "punitive action" means "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (§ 3303.)

Therefore, "[POBRA] *requires* the tolling of the one-year statute of limitations while a criminal investigation is pending if the misconduct is the subject of that investigation." (*Breslin*, *supra*, 146 Cal.App.4th at p. 1078.)

## II. Standard of review.

"Discipline imposed on public employees affects their fundamental vested right in employment." (*Melkonians v. Los Angeles County Civil Service Com.* (2009) 174 Cal.App.4th 1159, 1167; accord, *Jackson*, *supra*, 111 Cal.App.4th at p. 902.) "In a mandamus proceeding affecting a fundamental vested right, an appellate court must sustain the trial court's factual findings that are supported by substantial evidence. Questions of law are reviewed de novo." (*Negron v. Los Angeles County Civil Service Com.* (2015) 240 Cal.App.4th 874, 881-882, citing *Jackson*, *supra*, at p. 902.)

## III. Analysis.

Ochoa contends his termination was time barred under section 3304, subdivision (d)(1), because Bittle launched an investigation of the misconduct on March 25, 2013, and Levig served the "Notice of Proposed Disciplinary Action—Termination" on August 11, 2014, after 504 days elapsed.

Respondents insist Ochoa's misconduct was not discovered until May 6, 2013, the date Zimmerman authorized the internal affairs investigation. Moreover, they claim the one-year limitations period was tolled by the criminal investigations in KCSO cases Nos. SR13-10251 and SR14-16963.

a. *The one-year limitations period commenced March 25, 2013.*

As noted, before a punitive action can be undertaken against a transgressing officer, the investigation of the misconduct and requisite notification to the officer must be accomplished within one year of the public agency's discovery "by a person authorized to initiate an investigation . . . ." (§ 3304, subd. (d)(1); see *Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 106 ["[T]he one-year limitations period under . . . section 3304, subdivision (d)(1) begins to run when a person authorized to initiate an

12.

investigation discovers, or through the use of reasonable diligence should have discovered, the allegation of misconduct."].)

The record establishes a KCSO chief deputy, not a sergeant, can initiate an internal affairs investigation. Nonetheless, a sergeant is empowered to (1) "conduct fact-finding" in connection with purported Policies and Procedures violations to "determine[] if the allegation[s] [are] criminal or administrative in nature"; and (2) impose certain forms of discipline (e.g., documented oral counseling, written reprimands) when the violations are neither "serious" nor "criminal" and do not necessitate an internal affairs investigation. Clearly, a sergeant is authorized to initiate some sort of inquiry into a subordinate's alleged wrongdoing. (Cf. *Benefield v. Department of Corrections & Rehabilitation* (2009) 171 Cal.App.4th 469, 476-477 ["no evidence whatsoever" the officer who was informed of alleged misconduct had any authority to initiate an investigation].) Hence, the issue is whether this inquiry constitutes an "investigation" under section 3304, subdivision (d)(1). (See *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384 ["[Where] appeal involves the application of a statute to undisputed facts, our review is de novo."]; *Richardson v. City and County of San Francisco Police Com.* (2013) 214 Cal.App.4th 671, 692 (*Richardson*) ["Legal issues involving the interpretation of . . . section 3304 are reviewed de novo."].)

The fundamental objective of statutory construction is to ascertain legislative intent so as to effectuate the purpose of the law. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106 (*LACMTA*); *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.* (2001) 90 Cal.App.4th 64, 69; see Code Civ. Proc., § 1859.) "The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning." (*LACMTA*, *supra*, at pp. 1106-1107; accord, *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 469.) "We do not, however, consider the statutory language in isolation; rather, we look to the statute's

13.

entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.]" (*LACMTA*, *supra*, at p. 1107.)

In common parlance, an "investigation" refers to "a detailed examination or search, often formal or official, to uncover facts and determine the truth." (Webster's New World Dict. (2d college ed. 1982) p. 741.) POBRA does not explicitly provide its own specialized definition for the term. (See § 3300 et seq.)[9] Its language, however, indicates its procedural protections only apply to investigations "by [the public safety officer's] commanding officer, or any other member of the employing public safety department, that *could* lead to punitive action . . . ." (§ 3303, italics added; accord, *Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393, 1400.)

On March 25, 2013, Bittle, a sergeant, became aware of Priscilla's harassment claim against Ochoa by way of Chaidez's memorandum. Commensurate with his authority, he commenced an inquiry "to determine what the nature of the complaint was" by attempting to contact Priscilla. If Bittle found misconduct that did not rise to a "serious" or "criminal" level and did not warrant an internal affairs investigation, he had the power to issue a written reprimand. (See *ante*, fn. 8; see also *Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 317 [written reprimand is a "per se" punitive action

---

**9**     Thus, we find unconvincing respondents' suggestion that Bittle's "fact finding inquiry" could not constitute an investigation because, at the outset, he "was unsure if there were sufficient facts in [Priscilla]'s complaint against [Ochoa] to warrant a more serious investigation" and "was not certain exactly what to make of the allegations lodged against [Ochoa]." Obviously, the purpose of such an inquiry is to uncover the facts and evaluate whether they tend to prove or disprove the allegations. Respondents even acknowledge "[w]hen . . . Bittle received the memorandum from . . . Chaidez detailing a citizen's complaint involving [Ochoa], it was his responsibility to determine if there was any credence to the claims."

14.

under POBRA]; *Gordon v. Horsley* (2001) 86 Cal.App.4th 336, 347 [same].) In other words, once Bittle launched the inquiry, a punitive action, i.e., a written reprimand, *could* have resulted. (See *Otto*, *supra*, 89 Cal.App.4th at p. 997 ["[POBRA] does *not* require a showing that an adverse employment consequence has occurred or is likely to occur."].) Furthermore, "punitive action . . . may exist when action is taken which *may* lead to the adverse consequences specified in section 3303[10] at some *future time*." (*Id.* at p. 996.) In the instant case, "it is easy to determine that [Bittle's inquiry] might have led to punitive action, because it did lead to punitive action." (*Paterson v. City of Los Angeles*, *supra*, 174 Cal.App.4th at p. 1401.) In accordance with Policies and Procedures No. D-300 (see *ante*, fn. 6), Bittle forwarded interoffice memoranda to Hansen, a commander. Hansen presumably relayed the documentation to Zimmerman, the chief deputy. Zimmerman evaluated Priscilla's harassment claim and authorized the internal affairs investigation that eventually led to Ochoa's termination. (See *Otto*, *supra*, at p. 997 ["It is sufficient if [a] report's issuance and delivery to officials 'may lead' to [adverse employment] consequences in the future."].) The statute of limitations period, therefore, commenced March 25, 2013.

b. *The criminal investigation in KCSO case No. SR13-10251 tolled the one-year limitations period for at least 143 days.**

As noted, "[POBRA] *requires* the tolling of the one-year statute of limitations while a criminal investigation is pending if the misconduct is the subject of that investigation." (*Breslin*, *supra*, 146 Cal.App.4th at p. 1078.) On appeal from a trial court's ruling as to whether tolling provisions were properly applied to section 3304's one-year limitations period, "[t]he fundamental standard of review . . . is substantial evidence [citation], unless the appeal presents pure issues of law, in which case our

---

**10**     See *ante*, footnote 8.

*     See footnote, *ante*, page 1.

15.

review is independent.  [Citations.]"  (*Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977, 992-993; see, e.g., *Richardson*, *supra*, 214 Cal.App.4th at pp. 693-698 [applying substantial evidence standard of review].)

On April 9, 2013, Rutledge launched a criminal investigation in KCSO case No. SR13-10251.  On June 13, 2013, he asked the District Attorney to file criminal charges against Ochoa.  On June 21, 2013, the District Attorney rejected Rutledge's request but returned the case "for further investigation."  On July 2, 2013, Rutledge resubmitted his request for a criminal complaint.  On July 30, 2013, in connection with the case, Kohler reviewed Ochoa's personnel file.  She then assigned Caldas to investigate further.  His findings led the District Attorney to forgo prosecution.

The parties agree the criminal investigation in KCSO case No. SR13-10251 commenced April 9, 2013, and continued through July 30, 2013, suspending the limitations period for 112 days.  (See *Breslin*, *supra*, 146 Cal.App.4th at p. 1079 ["The time within which an act provided by law is to be done is computed by excluding the first day and including the last, unless that last day is a holiday."]; see also § 6800.)  However, Ochoa contends the "evidence regarding the investigation after [July 30, 2013,] is too vague to sufficiently establish when the tolling stopped."

" 'Applying the substantial evidence test on appeal, we may not reweigh the evidence, but consider that evidence in the light most favorable to the trial court, indulging in every reasonable inference in favor of the trial court's findings and resolving all conflicts in its favor.  [Citations.]' "  (*Richardson*, *supra*, 214 Cal.App.4th at p. 692.) "We uphold the trial court's findings unless they so lack evidentiary support that they are unreasonable.  We may not uphold a finding based on inherently improbable evidence or evidence that is irrelevant to the issues before us."  (*Breslin*, *supra*, 146 Cal.App.4th at p. 1078.)

The record shows Kohler testified she assigned Caldas to investigate KCSO case No. SR13-10251 "[p]retty quickly" after she reviewed Ochoa's personnel file.  Caldas

16.

testified he contacted Priscilla and reported his findings to Kohler "two weeks" later. According to Kohler, at a meeting that occurred "a month or two" after July 30, 2013, the District Attorney elected to forgo prosecution. On appeal, testimony may be rejected only when it is inherently improbable, i.e., unbelievable per se, physically impossible, or wholly unacceptable to reasonable minds. (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786; *Kolender v. San Diego County Civil Service Com*. (2005) 132 Cal.App.4th 1150, 1155.) Nothing compels us to do so here.[11] Based on Kohler's and Caldas's testimonies, the court found by a preponderance of the evidence that the criminal investigation ended sometime after August 11, 2013. The evidence—viewed in the light most favorable to this finding—demonstrates this investigation concluded between August 30 and September 30, 2013. Based on a start date of April 9, 2013, and a conservative end date of August 30, 2013, the investigation suspended the limitations period for 143 days. Therefore, on August 11, 2014, the date Ochoa was notified of his proposed termination, 361 days had elapsed.[12]

Finally, Ochoa complains the court erroneously placed the burden of proving the limitations period was tolled on him rather than respondents. We need not address this issue. Even assuming, arguendo, the burden of proof belonged to respondents, we have found there was substantial evidence Ochoa's misconduct was the subject of a pending criminal investigation until at least August 30, 2013. (See *Richardson*, *supra*, 214 Cal.App.4th at p. 698.)

---

[11] In his brief, Ochoa highlights the failure of Kohler, Caldas, and the District Attorney to maintain any records that identified exactly when KCSO case No. SR13-10251 was rejected. This may be unusual. Nonetheless, "[u]nusual circumstances are not necessarily inherently improbable." (*People v. Gunn* (1959) 170 Cal.App.2d 234, 240; accord, *Schaffield v. Abboud* (1993) 15 Cal.App.4th 1133, 1142.)

[12] Given our disposition, we need not address whether the criminal investigation in KCSO case No. SR14-16963 further tolled the limitations period.

17.

## **DISPOSITION**

The judgment is affirmed. Costs on appeal are awarded to respondents County of Kern and Kern County Sheriff Donny Youngblood.

_____
DETJEN, J.

WE CONCUR:

_____
HILL, P.J.

_____
LEVY, J.