Filed 9/2/15; part. pub. order 9/29/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THOMAS NEGRON, | No. B258031 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. BS144583) |
| v. | |
| LOS ANGELES COUNTY CIVIL SERVICE COMMISSION, | |
| Defendant; | |
| COUNTY OF LOS ANGELES et al., | |
| Real Parties in Interest and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Luis A. Lavin, Judge. Reversed.

Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton for Real Parties in Interest and Appellants.

Green & Shinee, Richard A. Shinee and Audra C. Call for Plaintiff and Respondent.

No appearance for Defendant.

The issue presented in this appeal is whether the Los Angeles County Sheriff's Department (the Department) can discharge a deputy sheriff for misconduct committed while the deputy was on unpaid, relieved-of-duty status. We conclude that the Department had the authority to do so and that the Supreme Court's decision in *Garvin v. Chambers* (1924) 195 Cal. 212 (*Garvin*) does not compel a different result.

## BACKGROUND

Respondent Thomas Negron (Negron) had been employed as a deputy with the Department for eight years when he became embroiled in a contentious divorce. As a result of the divorce proceedings, Negron began experiencing stress, anxiety attacks, and other physical symptoms that caused him to miss work. Negron's continuing anxiety issues eventually caused him to take a paid medical leave of absence, during which he was required to report to Sergeant Doris Walker, his superior at the Pitchess Detention Center (PDC). The Department subsequently determined that Negron's anxiety problems were not work-related and relieved him of duty in November 2010. After he was relieved of duty, Negron stopped receiving a salary and was no longer required to report to work. His benefits terminated at an unspecified time after he was relieved of duty.

**Negron's DUI arrest and conviction**

On January 26, 2011, California Highway Patrol (CHP) Officer Escalera stopped Negron in San Bernardino County after observing him driving erratically at an excessive speed. Escalera ran a check on the vehicle Negron was driving and learned that it was registered to a sheriff's deputy and that the registration had expired in 2009.

Escalera asked Negron to produce identification so that he could confirm whether Negron was a law enforcement officer. Negron said he was not carrying any form of identification; however, Escalera observed a sheriff's deputy's uniform in the back seat of the car with the name "Negron" printed on the nametag. Unsure whether the uniform or the vehicle belonged to Negron, Escalera asked Negron to exit the vehicle.

According to Escalera, once Negron got out of his car, "things started going downhill." Negron became impatient and started raising his hands, complaining that Escalera was keeping him from meeting his girlfriend. Escalera found Negron's

2

explanation for his car's expired registration -- that he was going through a divorce -- to be evasive. Uncomfortable with Negron's behavior, Escalera asked Negron to step back while he called for backup.

When additional CHP officers arrived, Negron began yelling and cursing at them and complaining that they were "holding him up." Escalera again attempted to confirm Negron's status as a deputy sheriff by asking for Negron's agency's phone number. Negron refused to provide one.

Negron continued to harass the CHP officers and refused to stand away from them while they conferred with one another. As a result, Escalera handcuffed Negron and told him that if he did not calm down, he would be taken to jail. During this exchange, Escalera smelled alcohol on Negron's breath. Concerned that he might have to arrest a law enforcement officer, Escalera requested a supervisor to respond to the scene.

CHP Sergeant Salvador Suarez responded to Escalera's call. Upon contacting Negron, Suarez detected the odor of alcohol and observed that Negron appeared intoxicated. Negron was uncooperative and refused to answer questions. When Negron's girlfriend arrived at the scene, Negron became agitated and refused to sit down, despite Suarez's orders to do so. Negron's behavior caused Suarez to believe that Negron was under the influence of both alcohol and drugs. Suarez then ordered Escalera to transport Negron to San Bernadino's Central Detention Center to conduct field sobriety tests.

At the detention center, Negron told Escalera that he had consumed no alcohol before he was stopped. Negron refused, however, to cooperate during the field sobriety tests, and the results of a chemical breath test indicated that he had a blood alcohol level of 0.20. Escalera placed Negron under arrest for driving under the influence, confiscated Negron's driver's license, and issued a driver's license suspension notice and a 30-day temporary license that expired on February 26, 2011.

Upon his release, Negron telephoned the watch sergeant at the Department's Pitchess Detention Center and notified him of the arrest. On August 8, 2011, Negron

3

pled guilty to a violation of Vehicle Code section 23152, subdivision (b) and was placed on probation for three years.

**Driving with a suspended license**

On March 25, 2011, Negron drove from his residence in Santa Clarita to the Newhall CHP office to obtain a copy of his January 26, 2011 arrest report. The CHP officer in the office asked Negron if he had his driver's license and whether he had driven to the CHP office. Negron responded that his license had been confiscated and that he had a temporary permit in his car. Negron then retrieved the temporary permit and presented it, along with a business card identifying him as a deputy sheriff, to the CHP officer. The officer told Negron the temporary permit had expired, that he did not have a valid license, and that he needed to contact someone to drive him home. Negron said he did not have anyone to call for assistance.

The CHP officer called Sheriff's Deputy Keith Shaw, who was stationed at PDC, to request that someone from the Department transport Negron and his car to Negron's home or to one of the Department's stations. Shaw and Deputy Randolph Ortiz responded to the CHP Newhall station, where they saw Negron waiting by himself. Negron told the deputies he had driven to the Newhall station to obtain a copy of his January 2011 arrest report. Shaw then drove Negron to PDC in Negron's car while Ortiz returned in a Department vehicle.

When Shaw dropped Negron and his car off at PDC, Shaw told Negron that he needed to have someone pick him up because he was not allowed to drive on a suspended license. Shaw also instructed Negron to report to his supervisor, Sergeant Walker, in person to explain his contact with the CHP at the Newhall station. Approximately 20 minutes later, Ortiz saw Negron drive out of the PDC parking lot.

Negron did not report in person to Sergeant Walker but telephoned her later that day. Negron told Walker that he had driven to CHP's Newhall station to obtain a copy of his January 26, 2011 arrest report and explained that Shaw had picked him up at the Newhall station after CHP officers told him he could not drive on a suspended license. When Walker asked if anything else had happened, Negron responded "no."

4

After talking to Negron, Walker called Shaw and a Department lieutenant to confirm Negron's story. Shaw said that he had instructed Negron to speak to Walker in person about the incident at the CHP Newhall station. The lieutenant told Walker that Ortiz had seen Negron drive his car out of the PDC parking lot.

Walker then called Negron back and asked him how he had gotten home from PDC. Negron said that his girlfriend had picked him up. When Walker questioned how Negron and his girlfriend could drive both their cars to his home, Negron added that his girlfriend had brought a friend. During her telephone conversations with Negron, Walker never advised Negron that she was conducting an investigation into his conduct or that he had the right to be represented during his conversations with her.

After speaking with Negron, Walker learned that Negron's girlfriend, who also worked at the Department, had been working throughout the time Negron claimed she had driven him home. Concerned that Negron had lied to her about driving with a suspended license, Walker reported him to her supervisors and drafted a report outlining Negron's conduct on March 25, 2011.

**Negron's discharge**

On November 20, 2011, the Department issued Negron a Notice of Intent to Discharge informing him of the intent to discharge him based on the following allegations of misconduct: on January 26, 2011, Negron was stopped by the CHP for driving erratically and was repeatedly uncooperative, evasive, and resistive with the CHP, resulting in a request for backup assistance and Negron's arrest. He later produced an alcohol test reading of 0.20 and plead guilty to driving under the influence. On March 25, 2011, after being advised by the CHP that his driver's license had been suspended, Negron violated Vehicle Code section 14601.2 by driving. He failed to obey the orders of Deputy Shaw to report to Sergeant Walker to explain his contact with the CHP and then made false statements to Sergeant Walker as to how he had gotten home.

The Department maintained that Negron's conduct violated sections 3-01/030.05, 3-01/030.010, and 3-01/040.70 of the Department's Manual of Policy and Procedures. Those sections provide in relevant part as follows:

5

"3-01/030.05 GENERAL BEHAVIOR

"A member shall not act or behave privately or officially in such a manner as to bring discredit upon himself of the department.

"3-01/030.10 OBEDIENCE TO LAWS, REGULATIONS, AND ORDERS

"a) Members shall not willfully violate any federal statute, state law or local ordinance . . . .

"[¶] . . . [¶]

"e) Members who violate any rules, regulations, or policies of the Department or the County, shall be subject to disciplinary action. The commission or omission of any other act contrary to good order and discipline shall also be the subject of disciplinary action . . . .

"[¶] . . . [¶]

"NOTE: For purposes of this section, any reference to 'members' shall include any member of the Department, both sworn and professional staff."

"3-01/040.70 FALSE STATEMENTS

"Members shall not make false statements when questioned, interviewed or in reports submitted."

On December 22, 2011, following a *Skelly*[1] meeting, the Department issued a Notice of Discharge, sustaining the allegations of misconduct and terminating Negron's employment with the Department.

Negron appealed, and a three-day hearing was conducted before a hearing officer in September and October 2012. At the hearing, Negron argued that the Department lacked authority to discipline him for the conduct alleged in the Notice of Discharge because that conduct occurred while Negron was on relieved-of-duty status and not receiving pay from the Department. Negron also sought to exclude evidence of his

---

[1] *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194.

statements to Walker on March 25, 2011, arguing that they were obtained in violation of the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.).

On January 29, 2013, the hearing officer issued a proposed decision, recommending that the Civil Service Commission (Commission) sustain Negron's discharge. The hearing officer found that Negron's conduct, including his January 26, 2011 arrest and conviction for driving under the influence, his interaction with the CHP officers, and his driving with a suspended license on March 25, 2011, violated sections 3-01/030.05 and 3-01/030.10 of the Department's Manual of Policy and Procedures. The hearing officer further found that Negron violated section 3-01/040.70 of the Department's Manual of Policy and Procedures by making false statements to Sergeant Walker when he told her that a friend had driven him home on March 25, 2011, when in fact he had driven himself home but that Negron did not violate section 3-01/030.10 by disobeying an order from Deputy Shaw.

The hearing officer further found that Negron's telephone conversation with Sergeant Walker violated section 3303 of POBRA because it constituted an interrogation and Walker failed to provide Negron with the proper procedural safeguards. The hearing officer refused, however, to exclude Negron's statements made during that phone call, concluding that an administrative hearing officer lacks authority to exclude statements made in violation of POBRA because such a remedy is available only in a trial court.

Negron objected to the hearing officer's proposed decision, again arguing that the Department lacked authority to discipline him and that his statements should have been excluded under POBRA. On June 5, 2013, the Commission overruled Negron's objections and adopted the hearing officer's findings and recommendations.

**Mandamus proceedings**

Negron filed a petition for administrative mandamus challenging the final order of the Commission. He argued that *Garvin, supra*, 195 Cal. 212, prohibited the Department from disciplining him for misconduct committed while he was not receiving any salary or benefits from the Department, that the Commission should have excluded statements

made in violation of his rights under POBRA, and that substantial evidence did not support the termination of his employment.

The trial court granted the petition for writ of mandate and ordered the Commission's final order to be set aside on the ground that the Department lacked authority, under *Garvin*, to discipline Negron for misconduct committed while he was on unpaid relieved-of-duty status.

The trial court concluded that Negron was not entitled to the protections of POBRA because he was not employed as a sheriff's deputy and that accordingly "he was not a peace officer within POBRA's scope at the time those statements were made and he is not entitled to have those statements excluded from future proceedings on POBRA grounds." The trial court further concluded that any issue regarding the POBRA violation found by the hearing officer and the remedy for that violation was moot in light of the court's ruling. In a footnote, however, the trial court noted that if it were to address the remedy for the POBRA violation, it would suppress the evidence concerning Walker's discussion with Negron and that "[i]f this evidence is suppressed, the weight of the evidence does not support the finding that [Negron] violated the Department's Manual of Policy and Procedures by making false statements to Sergeant Walker, or the penalty of discharge" because the "Department's main concern was that [Negron] lied to his supervisor."

A judgment was entered granting the petition for peremptory writ of mandate and ordering the Commission to set aside its June 5, 2013 decision sustaining Negron's discharge and to reconsider its action in light of the trial court's decision. The Department, Sheriff Leroy Baca, and the County of Los Angeles (collectively, appellants), as real parties in interest, appeal from the trial court's order.

**DISCUSSION**

**I. Standard of review**

In a mandamus proceeding affecting a fundamental vested right, an appellate court must sustain the trial court's factual findings that are supported by substantial evidence.

8

Questions of law are reviewed de novo. (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 903.)

## II. Department's authority to discipline Negron

Appellants contend the trial court erred by concluding that *Garvin* prohibited the Department from discharging Negron for conduct that violated the Department's Manual of Policy and Procedures while he was on unpaid relieved-of-duty status.

### A. *Garvin*

In *Garvin*, a city of Oakland police officer named Garvin was accused of violating the National Prohibition Act and was suspended without pay pending investigation of the alleged violation. (*Garvin, supra*, 195 Cal. at p. 217.) Garvin appealed the suspension order to the civil service board and retained an attorney to represent him in the appeal.

While Garvin's appeal was pending and his suspension order was still in effect, the chief of police asked to meet with him. Garvin, accompanied by his attorney, appeared at the chief's office for the meeting. The chief asked Garvin to meet with him alone, and Garvin responded that he wanted his attorney to be present. When the chief ordered Garvin to meet with him alone, Garvin refused and left with his attorney. (*Garvin, supra*, 195 Cal. at p. 218.)

Immediately after the aborted meeting, the chief filed a report recommending Garvin's discharge for insubordination, a violation of section 81of the city charter and of a rule governing "'conduct adverse to good order and discipline of the department.'" (*Garvin, supra*, 195 Cal. at p. 219.) Although the charge against Garvin for violating the National Prohibition Act was subsequently dismissed, he was fired for insubordination. Garvin sought writ review of the civil service board's approval of his discharge, and the trial court set aside the discharge order.

The Supreme Court affirmed the order setting aside Garvin's discharge, concluding that the civil service board lacked jurisdiction to adjudicate Garvin's conduct as insubordination. (*Garvin, supra*, 195 Cal. at p. 226.) The court reasoned that "[i]nsubordination can be rightfully predicated only upon a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed" and that "while

9

the order of indefinite suspension was in force Garvin's status as a policeman was suspended to the extent that he could not be called upon to do police duty nor be held amenable for a failure to do such duty." (*Id*. at p. 224.) The court in *Garvin* further noted that Garvin had been discharged for refusing to obey an order that did not concern performance of police duty, but that required him to serve as a "witness against himself" in a quasi-criminal investigation of the charges underlying his suspension. (*Ibid*.) Such conduct, the court concluded, could not constitute insubordination in violation of the department's rules and could not serve as a jurisdictional basis for the order discharging Garvin from the police department. (*Id*. at p. 226.)

### B. Negron's relieved-of-duty status did not immunize him from discipline

In the instant case, Negron was discharged not for insubordination, but for violating state law by driving in a dangerous manner while under the influence of alcohol; for driving with a suspended license; for being uncooperative, evasive, and belligerent toward CHP officers; and for making false statements -- conduct for which he could be held accountable even when relieved of his duties as a deputy sheriff.

Until he was discharged by the Department, Negron was a classified employee of Los Angeles County. (See L.A. County Civ. Service Rule 2.24; L.A. County Code, § 5.04.030(F).) Though Negron contends his relieved-of-duty status takes him outside the classified service, he offers no persuasive authority for that assertion. Instead we find the court's observation in a similar case, *Ballf v. Public Welfare Dep't* (1957) 151 Cal.App.2d 784 at page 788, to be instructive: "The fact that a person is on leave from his 'employment' makes him no less an employee." Furthermore, Negron himself -- while relieved-of-duty -- held himself out as a deputy sheriff by presenting a business card which identified him as a deputy sheriff to the CHP officer at Newhall station.

Negron's conduct reflected adversely upon and was a discredit to the Department. At the time of his arrest, Negron's sheriff's deputy uniform was plainly visible in the back seat of his car, of which CHP Officer Escalara took note. The vehicle registration for Negron's car indicated the owner was a deputy sheriff.

10

Unlike *Garvin*, in which the dismissed officer's refusal to serve as a witness against himself could not constitute insubordination in violation of departmental rules, Negron's conduct comes squarely within the prohibitions imposed by the Department's Manual of Policies and Procedures. Negron's argument that he was not subject to those prohibitions while relieved of duty is not well taken, especially given that he held himself out as a sheriff's deputy and maintained the accoutrements of a deputy while on relieved-of-duty status. Given these circumstances, we hold that the Department had authority to discharge Negron and that *Garvin* did not preclude the Department from doing so. The trial court's conclusion to the contrary was in error.

## III. POBRA violation

Neither party has challenged the trial court's determination that Negron was not entitled to the protections of POBRA.[2] Whether Negron's statements to Sergeant Walker should have been suppressed from evidence, and whether, if Negron's statements were suppressed, substantial evidence supported his discharge, are issues that are not properly before this court and we do not address them.

### DISPOSITION

The judgment is reversed. Appellants are awarded their costs on appeal.

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.
HOFFSTADT

---

[2]    Appellants claim that POBRA is not an issue in this case, and Negron filed no cross-appeal challenging the trial court's determination that POBRA did not apply. We do not address the trial court's commentary, in a footnote to its statement of decision, regarding what it might have done had it not determined that POBRA was inapplicable.

11

Filed 9/29/15

**CERTIFIED FOR PARTIAL PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THOMAS NEGRON, | No. B258031 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. BS144583) |
| v. | ORDER FOR PARTIAL PUBLICATION |
| LOS ANGELES COUNTY CIVIL SERVICE COMMISSION, | |
| Defendant; | |
| COUNTY OF LOS ANGELES et al., | |
| Real Parties in Interest and Appellants. | |


THE COURT:*


Good cause appearing, the opinion in the above entitled case, filed September 2, 2015, is ordered partially published in the official reports.


Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.


_____
*ASHMANN-GERST, Acting P. J., CHAVEZ, J., HOFFSTADT, J.