Filed 6/28/23  Santillan v. City of Selma CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FRANK SANTILLAN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CITY OF SELMA, et al.,<br><br>Defendants and Appellants. | F084280<br><br>(Super. Ct. No. 21CECG00155)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  Gabriel L. Brickey, Judge.

Liebert Cassidy Whitmore, Shelline K. Bennett and Tony G. Carvalho, for Defendants and Appellants.

Mastagni, Holstedt and Steven W. Welty for Plaintiff and Respondent.

-ooOoo-

Selma Police Department Sergeant Frank Santillan was terminated from employment for various reasons.[1]  He appealed his termination to the Selma Personnel Commission.

---

[1] The reasons for termination are detailed below.

The Commission unanimously voted to reinstate Santillan's employment. The Selma City Council, however, "revoked" the Commission's recommendation and finalized Santillan's termination.[2]

Santillan challenged Selma's decision by seeking an administrative writ in the superior court. (See Civ. Code Proc., § 1094.5.) The superior court concluded the evidence did not support Selma's allegations and granted the writ, "commanding" Selma "to set aside its decision to terminate" Santillan and instead "issue a new decision in compliance" with the order.

Selma now appeals from the superior court's order. We affirm.

## BACKGROUND

For 10 years, two Selma Police Department employees engaged in a personal, sexual relationship. Those individuals—a female lieutenant superior to a male subordinate officer—are not parties to this appeal, but their relationship is central to the case.

Factual Background

In 2016, Officer Andrew Guzman made numerous complaints about colleagues including Santillan. The complaints against Santillan generally related to misusing Selma resources.

In late 2018, Guzman learned of an impending shift assignment. Upon hearing the assignment, another officer worried about "get[ting] the short end of the stick." Guzman joked,[3] "[W]e'll have [him] take care of the [lieutenant] in the bedroom," referring to the sexual relationship between the lieutenant and the subordinate officer.

---

[2] Selma's personnel-review proceedings mandate the "City Council" to "review" and "affirm, revoke[,] or modify" the Commission's recommendation.

[3] The record is clear Guzman was joking when he made the comment. We do not condone the comment but simply note it was intended as a joke.

2.

Another officer, thinking the joke was funny, informed Santillan. Santillan took exception to it and informed the lieutenant, the lieutenant told the chief, and the chief initiated an investigation into Guzman's remark.

During the investigation, the investigator asked Santillan, "Do you have any knowledge of why [Guzman's] statement would be made?" Santillan responded, "Well, all I would say is that regardless of the reason for it being made, I found it to be highly inappropriate."[4]

Based largely on this question and answer, Selma terminated Santillan's employment because it believed he violated policy by failing to disclose material information in an investigation and retaliated against a fellow officer.[5] Santillan appealed the decision to the Selma Personnel Commission.

Commission Hearing

The Commission conducted a full hearing at which several witnesses testified. The investigator testified Guzman's joke "was a pretty harsh comment" and he "could see" why an investigation "would be initiated for something like that comment." He also disclosed he was well aware, for nearly 10 years, of rumors regarding the lieutenant's sexual relationship with a subordinate officer.

Santillan testified he reported the lieutenant's relationship to his immediate superior many years prior, but added "[a]bsolutely nothing" came from his report. When asked, at the hearing, "why … Guzman made the statement that he made," Selma objected the question called for "[s]peculation." The objection was sustained. Santillan

---

[4] This question and answer was audio recorded. At Selma's insistence, we have listened to the recording.

[5] A succinct document precisely stating and setting forth the actual charges against Santillan does not appear in the record. We piece together the charges from various sources in the record, primarily Selma's "Notice of Final Discipline[.]"

3.

later answered, "[Guzman] said it probably because he knows of the relationship" between the lieutenant and the subordinate officer.

## Commission's Recommendation

The Commission found Santillan committed almost no misconduct.[6] It found "[90%] of [Selma Police Department] officers … had knowledge" of the lieutenant's relationship, Santillan did in fact previously report the relationship, and Selma "failed to show that" Santillan "conspired" with others "against Guzman and retaliated against Guzman …." It also found Santillan would have violated policy by "not report[ing] … Guzman's derogatory comment made about a superior officer." The Commission subsequently voted to reinstate Santillan's employment.

## Selma's Ultimate Decision

The Selma City Council "revoked" the Commission's recommendation. Selma found the Commission "failed to determine the retaliation charge," Santillan did not report the relationship, and he was "evasive and dishonest" during the investigation. It then "fully reinstated" Santillan's termination.

## Superior Court Proceedings

Santillan sought review in the superior court. The superior court ultimately held "the evidence [did] not support any of [Selma's] allegations." Specifically, the court found:

1) the relationship in issue "was common knowledge" and an "open secret in the department;"

---

[6] The lone misconduct the Commission found true was violating "or ordering or instructing a subordinate to violate any policy, procedure, rule, order, directive, requirement or failure to follow instructions contained in department or City manuals." Although not concrete, it appears this finding referred to Santillan's "complacen[cy] regarding his knowledge of … changes in" a certain "policy" related to vehicle use.

4.

2) Santillan "previously reported the relationship many years prior to multiple individuals;"

3) Santillan did not "intentionally withh[o]ld what was, essentially, common knowledge throughout the department;"

4) the relationship was "not a 'material fact;' "

5) the question asked during the investigation "would be considered an improper question that called for speculation;"

6) Santillan "cannot be presumed to know the motivation Guzman possessed for making the comment, as the possible answers to that question are infinite;" and

7) Santillan did not retaliate against Guzman.[7]

The court issued an administrative writ, ordering Selma "to set aside" Santillan's termination.

## DISCUSSION

This appeal involves two allegations.[8] Did Santillan violate policy by failing to disclose material information during the investigation? Did Santillan violate policy by retaliating against Guzman? We find the answer to both allegations is no.

## I. Reviewing Standards

" 'The trial court applies its independent judgment to the department's administrative decision, but with a strong presumption the department acted properly.' " (*Crawford v. City of Los Angeles* (2009) 175 Cal.App.4th 249, 253.) "When an

---

[7] Originally, there were four charges. Two of them related to Santillan allegedly failing to act after viewing a certain photograph but the superior court found Santillan credibly denied "seeing" the "photograph." Selma does not challenge these findings because it acknowledges they are entitled to deference on appeal. To quote the brief, Selma " 'folds' in light of the substantial evidence standard that applies to this Court's review of that decision." We accept the concession.

[8] As noted, there were two other allegations but the superior court factually resolved them against Selma. Selma does not appeal those rulings.

administrative decision substantially affects a fundamental vested right"—like a police officer's employment—"the trial court uses an independent judgment standard of review, examines the administrative record for errors of law, and exercises its independent judgment upon the evidence." (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 902.) "[A]n appellate court must sustain the trial court's factual findings that are supported by substantial evidence. Questions of law are reviewed de novo." (*Negron v. Los Angeles County Civil Service Com.* (2015) 240 Cal.App.4th 874, 881-882 (*Negron*).)

## II.  No Failure to Disclose

Selma contends the dishonesty issue presents two legal questions. One, "[w]as the existence of the … relationship a 'material fact' [Santillan] withheld?" Two, was the question posed during the investigation " 'an improper question that called for speculation,' as found by the Superior Court?" Santillan counters the "allegation is [not] supported by the evidence."

We conclude materiality presents a predominantly factual mixed question of law and fact, and the question posed during the investigation did not call for speculation. Applying the appropriate reviewing standards, we uphold the superior court's holding.

### A.  Additional Background

Selma Police Department policy requires candor and honesty. Particularly relevant here, the policy proscribes a "[f]ailure to disclose or misrepresenting material facts, or making any false or misleading statement on any application, examination form, or other official document, report or form, or during the course of any work-related investigation." It also prohibits a "[f]ailure to participate in, or giving false or misleading statements, or misrepresenting or omitting material information to a supervisor or other

person in a position of authority, in connection with any investigation or in the reporting of any department-related business."[9]

## B. Analysis

Selma rests its dishonesty argument on a single question and answer during the investigation. In highlighting the argument, Selma latches onto Santillan's testimony at the Commission hearing where he surmised Guzman "probably" made the comment due to the relationship. This testimony, Selma contends, is proof Santillan knew why Guzman joked about fixing the shift assignment. We disagree.

### i. Materiality

In our view, materiality presents a mixed factual and legal question. Materiality necessarily depends on context, i.e., facts. But ultimately, materiality is a legal conclusion.

"Selection of the appropriate standard of review for mixed questions is influenced by concerns of judicial administration—' "efficiency, accuracy, and precedential weight." ' [Citation.] If those concerns ' "make it more appropriate for a [trial] judge to determine whether the established facts fall within the relevant legal definition, we should subject [the trial judge's] determination to deferential … review. If, on the other hand, the concerns of judicial administration favor the appellate court, we should subject the [trial] judge's finding to de novo review." ' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384-385.)

We believe the materiality question in this case is predominantly factual. Accordingly, the superior court's conclusion the inappropriate relationship was immaterial is entitled to deference because it is reasonable. Its conclusion is supported by the record, specifically the fact nearly everyone in the Selma Police Department was

---

[9] We have fully reviewed the policy included in the administrative record. These quotes, and those below, do not purport to recite the entire policy, but they do fairly capture in essence what is at issue.

aware of the lieutenant's sexual relationship or at least rumors of it, including the investigator, and the fact Santillan previously disclosed the relationship.[10]

### ii. Speculation

Whether the investigatory inquiry into Santillan's "knowledge as to" Guzman's motivation is speculative presents a legal question. The superior court opined the question called for speculation. On this point we disagree.

The question posed during the investigation, i.e., the basis for dishonesty, called for actual knowledge. It is possible Santillan knew the reason Guzman made the comment. Most obviously, for example, Guzman might have simply told Santillan why he said it—that is why the investigator asked.

But that alone does not resolve the matter. To prove Santillan violated the policy by withholding any information, let alone material information, Selma had to prove Santillan knew the actual reason Guzman commented about the relationship. This is a factual question. Nothing in the record, however, supports concluding Santillan knew the real reason.

Santillan's guess when testifying at the Commission that Guzman made the statement because of the underlying relationship is just that—a guess. Indeed, when Santillan was asked at the Commission hearing why Guzman would joke about the lieutenant, Selma itself first objected to the question because it called for speculation. The objection was sustained, and only after that did Santillan testify Guzman "probably" made the joke due to the relationship.

---

[10] Selma vehemently disagrees with the conclusion Santillan previously disclosed the relationship. But factfinding is not our province. Even if we agreed with Selma, we cannot substitute our factual resolution for the superior court's reasonable conclusion. (*Negron, supra,* 240 Cal.App.4th at pp. 881-882.) Selma also urges a previous disclosure is "largely irrelevant to the truth of" its allegations. But a previous disclosure simply is relevant to materiality because materiality is contextual.

The reason, ostensibly, Guzman commented about the relationship is because he thought the joke was funny or would at least ease his worried colleague's anxiety. But it is not our place to guess. We highlight this point not to find facts but rather to underscore properly resolving this matter is a factual question best left to the superior court.

### iii. Conclusion

Resolving facts is the superior court's prerogative. The factual resolution in this case—that Santillan did not withhold material information—is entitled to deference because it is reasonable. Nothing in the record discloses Santillan knew why Guzman made the joke. Accordingly, we uphold the superior court's determination Santillan did not withhold material information or otherwise act with dishonesty.[11]

---

[11] In Selma's original termination order, it made clear Santillan was "not being terminated because [he] did not disclose [the] inappropriate relationship." It made the determination to terminate his employment, in part, because he "deliberately and dishonestly hid [the] misconduct during an internal investigation." Selma clarified, "when … asked … directly," Santillan "deliberately and dishonestly hid the fact that [Guzman's] comment had elements of truth …."

We take these statements, and those in Selma's appellate briefing, to mean Santillan was partly terminated *precisely* for the question and answer in the investigation. As we explained, however, the superior court reasonably found Santillan did not act dishonestly.

To the extent Selma urges its policy requires officers to volunteer material information notwithstanding any specific question, a claim not at all clear from the record or briefing, we agree we should defer to its policy interpretation. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 286; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14-15). Nonetheless, we, like the superior court, find Santillan did not fail to disclose *material* information.

Contrary to the city's argument, the fact Santillan reported the relationship many years prior, combined with the fact the investigator was well aware of rumors, rendered the information immaterial. This is true notwithstanding Selma's argument it was crucial for Santillan to disclose the relationship to the investigator because it would mitigate Guzman's culpability. By all accounts, nearly everyone, including the investigator, was aware of the underlying relationship.

## II. No Retaliation

Selma claims it "produced voluminous circumstantial evidence that [Santillan's] complaint was retaliatory." It also contends the superior court made several legal errors in its analysis relative to retaliation. Santillan, again, simply argues "[t]he evidence fails to establish" retaliation. We agree with Santillan.

### A. Additional Background

The Selma Police Department policy defines retaliation as "an adverse action of reprisal or intimidation against the person because he/she has engaged in protected activity, filed a charge of discrimination, participated in an investigation or opposed a discriminatory practice." The policy goes on to prohibit retaliation, specifically stating "[n]o member may retaliate against any person for engaging in lawful or otherwise permitted behavior; for opposing a practice believed to be unlawful, unethical, discriminatory or retaliatory; for reporting or making a complaint under this policy; or for participating in any investigation related to a complaint under this or any other policy."

### B. Analysis

Implicit in the superior court's finding the evidence did not support retaliation is a factual finding Santillan did not act with a retaliatory intent. This is a purely factual question. Indeed, Selma's argument it produced "voluminous circumstantial evidence" on the point essentially acknowledges its factual nature.[12]

While we might agree with Selma a facially valid report, like Santillan reporting Guzman's comment, is potentially retaliatory, that analysis misses the mark.[13] Whether a facially valid report *is* retaliatory requires factual resolution.

---

[12] Selma argues it "proved [Santillan's] only defense—that Guzman's comment was 'highly inappropriate'—was pure pretext …." But the superior court found otherwise.

[13] For example, Selma argues it is inadequate to defeat retaliation by solely intimating a complaint at issue is facially valid. We agree. But the superior court here

10.

The superior court's resolution, again, is reasonable and entitled to deference. The investigator himself testified Guzman's comment was particularly "harsh" and an investigation was justified. That alone is sufficient to defeat Selma's argument. We conclude the superior court properly found no retaliation.[14]

## DISPOSITION

The March 2, 2022, order granting Santillan's petition for writ of mandate is affirmed. Costs are awarded to Santillan.

SNAUFFER, J.

WE CONCUR:


LEVY, Acting P. J.


SMITH, J.

---

implicitly found no retaliatory intent. In other words, Santillan's facially valid complaint was not pretext for retaliation.

[14] Selma also complains the superior court erred in finding relevant the fact Santillan "lacked power to initiate investigations and discipline Guzman …." We agree with the city on this point. But, as explained, at bottom the superior court's holding is rooted in fact, not law. We must defer to the superior court because we are not entitled to disturb a reasonable factual resolution. (*Negron, supra,* 240 Cal.App.4th at pp. 881-882.)

11.