Filed 1/26/23; certified for publication 2/21/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LUIS GARCIA, | C094235 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2020-80003478-CU-WM-GDS) |
| v. | |
| STATE DEPARTMENT OF DEVELOPMENTAL SERVICES et al., | |
| Defendants and Respondents. | |

This case concerns the statute of limitations in the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.; statutory section citations that follow are found in the Government Code unless otherwise stated). "As its title suggests, the act sets forth a list of basic rights and protections which must be afforded all peace officers . . . by the public entities which employ them." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 135.) One of these protections is described in Government Code section 3304, subdivision (d)(1) (section 3304(d)(1)). According to this provision, a public

1

agency cannot discipline a peace officer "for any act, omission, or other allegation of misconduct" unless the agency completes its investigation and notifies the officer of its proposed discipline "within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct."

In this appeal, we consider two competing interpretations on the application of this statute when an officer commits multiple types of misconduct that the agency discovers on multiple dates. Under the first interpretation, offered by appellant Luis Garcia, section 3304(d)(1)'s one-year limitations period begins to run on *all* acts of misconduct once the agency initiates an investigation into any one of these acts. But under the second interpretation, offered by Garcia's employer, the limitations period begins to run on *an* act of misconduct only once the agency discovers that particular act.

The latter interpretation is the correct one. Section 3304(d)(1)'s text is clear that the limitations period for an act of misconduct begins to run on the date the agency discovers the misconduct, not the date it initiates an investigation into unrelated misconduct. Under this rule, as under similar discovery rules, each act of misconduct must be considered separately in determining the date the agency discovered the misconduct. Because the trial court here interpreted section 3304(d)(1) consistent with our own interpretation, we affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Garcia joined the State Department of Developmental Services (Department) as a peace officer in 2003. He started as a Police Officer I (officer) and promoted to become a Police Officer II (sergeant) in 2008.

In early 2018, Department leadership at Garcia's location became concerned that "Garcia and perhaps one or two other sergeants" were working certain positions at times "when it wasn't necessary" to maximize their overtime hours. For instance, leadership believed that several sergeants would come to work at odd hours (e.g., around midnight)

2

to staff the x-ray machine for staff and visitors, even though it was unnecessary to cover this position at these times. To prevent this type of conduct, in February 2018, leadership instructed Garcia and other sergeants that they were not to cover two positions, "X-Ray" and "Relief," "on any shift."

Shortly after, on or around May 24, 2018, the Department learned that Garcia had manipulated his colleagues' schedules to attempt to get around this limitation on his accrual of overtime. It learned, for example, that on several occasions Garcia created vacancies for "critical" positions by reassigning officers scheduled for these positions to the x-ray and relief positions—the positions that sergeants, like Garcia, had been barred from covering themselves—and he then assigned the vacant "critical" positions to himself. Garcia later sought overtime for covering the vacancies he had created. Through these maneuvers, the Department suspected, Garcia achieved the very result his leadership had sought to prevent—unnecessary overtime and unnecessary staffing of the x-ray and relief positions. On learning of this conduct, the Department asked the Office of Law Enforcement Support (OLES)—a separate governmental entity charged with investigating certain "alleg[ations of] serious misconduct by [Department] law enforcement personnel" (Welf. & Inst. Code, § 4023.6, subd. (a)(1))—to investigate the matter.

OLES afterward did as requested. During its investigation, which took place between June 2018 and February 2019, OLES discovered that Garcia had also committed various acts of misconduct unrelated to the alleged overtime manipulation. Among other things, it found (1) in February 2018, after overhearing another sergeant's call with a gay coworker, Garcia asked the sergeant if the coworker was his "boyfriend" and if the sergeant would "suck his dick"; (2) on May 7, 2018, after becoming upset with a subordinate officer, Garcia told the officer to "get the fuck out" of the office to inspect a car accident and then, later the same day, improperly ordered the officer to work overtime; (3) on May 20, 2018, after having an argument with another sergeant, Garcia

3

said he would make sure the sergeant "doesn't get any fucking overtime" and would "cut his throat on overtime" even "if his kids starve"; (4) between June 2017 and June 2018, Garcia used his work computer for nonwork purposes, including for downloading and viewing various images and videos; and (5) in early June 2018, without authority or a legitimate purpose, Garcia asked an office technician to show him a lieutenant's timesheet, took a picture of a sign-in log, and asked an investigator to show him an old on-call schedule.

On April 26, 2019, two months after OLES finished its investigation, the Department issued a notice of adverse action to Garcia, stating he would be terminated effective May 3, 2019. The notice explained that the adverse action was based on Garcia improperly scheduling himself to work overtime, acting unprofessionally when he told a subordinate to "[g]et the fuck out" of the office to inspect a traffic accident, improperly ordering this same subordinate to work overtime, threatening to retaliate against another sergeant by cutting his overtime, and taking photographs of workplace items, including a work schedule, for no legitimate reason. The Department afterward, as proposed in the adverse action, released Garcia from employment on May 3, 2019. But several months later, after Garcia appealed the Department's decision, the Department withdrew its adverse action. On September 5, 2019, the Department retroactively reinstated Garcia to his position as sergeant.

On September 26, 2019, three weeks after withdrawing its initial adverse action, the Department issued a second notice of adverse action to Garcia, this time stating he would be demoted from a sergeant to an officer effective October 4, 2019. The notice explained that the adverse action was based on Garcia improperly scheduling himself to work overtime, acting unprofessionally when he told a subordinate to "[g]et the fuck out" of the office to inspect a traffic accident, improperly ordering this same subordinate to work overtime, threatening to retaliate against another sergeant by cutting his overtime, making "rude" and "unprofessional" comments about several colleagues, using "a highly

4

offensive homosexual slur" and suggesting a colleague "was engaged in intimate contact with a co-worker," using his work computer for nonwork purposes (including by downloading 730 images and 30 videos), viewing these images and videos while on duty, asking a technician to show him a lieutenant's timesheet, taking photographs of workplace items, including a work schedule, for no legitimate reason, and asking an investigator to show him an old on-call schedule.

Garcia appealed the Department's decision to the State Personnel Board (SPB)—"the administrative body charged with the enforcement of the Civil Service Act, including the review of punitive action taken against [state] employees." (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 201.) He then filed a motion to dismiss the Department's adverse action, arguing that section 3304(d)(1)'s one-year limitations period barred the Department's action. He reasoned that because the Department asked OLES to investigate his alleged overtime misconduct on or around May 24, 2018, the Department needed to serve its notice of adverse action within one year of that date.

The SPB largely disagreed. It first rejected Garcia's claim that, in disciplinary matters with multiple acts of misconduct, the initiation of an investigation into one act of misconduct necessarily triggers section 3304(d)(1)'s one-year limitations period for all acts of misconduct. It found instead: "In those cases where a peace officer is disciplined for separate incidents with different discovery dates, the SPB should separately evaluate whether the one-year limitation bars some of the charges for discipline but not others." But although the SPB rejected Garcia's reading of section 3304(d)(1), it agreed one type of alleged misconduct—Garcia's overtime manipulation that initially triggered the investigation—fell outside the statute's one-year limitations period. It explained that "the allegations regarding scheduling manipulation are time-barred . . . and shall not be considered as cause for discipline," because the Department discovered these allegations of misconduct in May 2018, over a year before it issued its notice of adverse action in September 2019. But it found Garcia "did not establish the allegations unrelated to

5

scheduling manipulation are [al]so time-barred," and it found these remaining allegations sufficient to sustain the Department's decision to demote Garcia.

Following the SPB's decision, Garcia filed a petition for writ of mandate in superior court. As in the SPB proceeding, and as relevant here, Garcia contended section 3304(d)(1)'s one-year limitations period barred the Department's adverse action. He asserted that the Department "had exceeded the one-year statute of limitations contained in Government Code 3304(d)(1), since the authorized investigation had commenced on May 24, 2018 and [he] was not served until September, 2019."

But the trial court, like the SPB, rejected Garcia's challenge. The court understood Garcia to argue that the Department "discovered all the allegations of misconduct against him in late May 2018." But it found he "offer[ed] little insight . . . into when [the Department] or another person authorized to initiate an investigation learned of allegations other than the allegations about manipulated work schedules." And because, the court went on, it would "not assume that [the Department] learned about other allegations against Garcia on the date [it] discovered the allegation about manipulated schedules," it denied Garcia's petition. The court afterward entered judgment in the Department's favor.

Garcia timely appealed.

## DISCUSSION

Section 3304(d)(1) provides, in relevant part, that "no punitive action [against a public safety officer] . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of

6

Adverse Action articulating the discipline that year. . . . The public agency shall not be required to impose the discipline within that one-year period." As our Supreme Court has explained, this provision serves "to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but will know within one year of the agency's discovery of the officer's act or omission that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline." (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 322 (*Mays*), superseded by statute on other grounds as stated in *Squire v. County of Los Angeles* (2018) 22 Cal.App.5th 16, 23.)

The issue in this case concerns the application of section 3304(d)(1) in cases with multiple acts of misconduct discovered on multiple dates. In Garcia's view, the statute's one-year limitations period begins to run on all acts of misconduct once the agency initiates an investigation into any one of these acts. So, for instance, if an agency initiates on February 1, 2020, an investigation into an alleged act of misconduct that the agency initially discovered on January 1, 2020, and the agency then, during the investigation, discovers an unrelated act of misconduct on March 1, 2020, the limitations period for both acts will begin to run on February 1, 2020. No matter, Garcia asserts, that one of these acts was discovered after February 1, 2020. And no matter, Garcia suggests, that another of these acts was discovered before February 1, 2020.

We disagree. Section 3304(d)(1) explains that a public agency cannot discipline a peace officer "for any act, omission, or other allegation of misconduct" unless the agency completes its investigation and notifies the officer of its proposed discipline "within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct." As this language makes plain, the date of "discovery" for each act, not the date an investigation is initiated for any one act, is the relevant consideration.

Case precedent confirms that the date of discovery, not the date any investigation is initiated, is the guiding consideration. As our Supreme Court explained in a prior case

7

involving section 3304(d)(1), "[t]he one-year period runs from the time the misconduct is discovered." (*Mays, supra*, 43 Cal.4th at p. 321.) Although the court made this statement in a case involving multiple acts of misconduct discovered on one date (*id.* at p. 318, fn. 2), the rule is no different when a case involves multiple acts of misconduct discovered on multiple dates. In these cases too, "[t]he one-year period runs from the time the misconduct is discovered"—though in this circumstance, "the time the misconduct is discovered" may vary depending on the misconduct.

Other courts construing section 3304(d)(1) have agreed with this interpretation of the rule. In *Crawford v. City of Los Angeles* (2009) 175 Cal.App.4th 249 (*Crawford*) the court applied section 3304(d)(1) in a case involving, like ours, different acts of misconduct discovered on different dates. Consistent with our reading of the statute, the court treated each act of misconduct separately in calculating the date of discovery. In the end, although the court accepted that the agency there involved could not pursue discipline for the acts it initially discovered (because it took too long to investigate and notify the officer), it found the agency could still pursue discipline for the acts it discovered on later dates. (*Crawford,* at p. 251; see also *id.* at p. 253 [noting that different acts of misconduct were discovered on different dates].) While the question before us here was not analyzed or decided in *Crawford,* the court impliedly found that the one-year statute of limitations began to run on the date of discovery of each of the separate acts of misconduct.

The court's decision in *Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87 is similar. The court there, also applying section 3304(d)(1), treated each act of misconduct separately in calculating the applicable date of discovery. (*Pedro,* at pp. 102 [agency discovered two acts of misconduct on December 3, 2009], 104, 106 [agency should have discovered a third act of misconduct on November 9, 2009].)

Case law concerning similar discovery rules are also consistent with this conclusion. Our Supreme Court's decision in *Fox v. Ethicon Endo-Surgery, Inc.* (2005)

8

35 Cal.4th 797 (*Fox*) aids us here. The court there considered the common law discovery rule, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Id.* at p. 807.) In applying the rule in a case involving two causes of action—a medical malpractice claim based on a failed surgery and a products liability claim based on a medical device that malfunctioned during the surgery—the court did not find the discovery of the medical malpractice claim began the running of the statute of limitations for the products liability claim. (*Id.* at p. 815 [rejecting view that a party must "file all causes of action when one cause of action accrued"].) Nor did it find the initiation of an investigation into the medical malpractice claim began the running of the statute of limitations for the products liability claim. It instead found each cause of action needed to be evaluated separately, explaining that "distinct types of wrongdoing . . . should be treated separately" in determining the date the plaintiff discovered, or had reason to discover, the cause of action. (*Id.* at pp. 814-815.)

Consistent with this precedent and the statutory text, we too agree that "distinct types of wrongdoing . . . should be treated separately" in determining the date of discovery. (*Fox, supra*, 35 Cal.4th at pp. 814-815.) We also conclude that this reading, rather than Garcia's, finds support in the principle that statutory interpretations that would produce absurd results should be avoided. A simple example illustrates the point. If an agency discovered an act of misconduct on January 1, and thereafter initiated an investigation that same day, and then, during the investigation, discovered an unrelated act of misconduct on December 31, under Garcia's reading of the statute, the agency would have one day to complete its investigation and propose discipline for the misconduct discovered on December 31, even if the agency could not have reasonably discovered this misconduct at an earlier time. We decline to endorse this reading of section 3304(d)(1), which, apart from finding no basis in the statutory text, would lead to

9

absurd results.  (See *People v. Mendoza* (2000) 23 Cal.4th 896, 912, fn. 7 [disfavoring a reading of a statute that would lead to absurd consequences].)

Garcia makes four arguments favoring his reading of the statute.  But none are persuasive.

First, he claims:  "While a number of exceptions to section 3304(d)(l) are set forth in section 3304(d)(2), . . . none of those statutory exceptions includes a provision extending the 12-month statute when the investigators have discovered new material in the course of their investigation."  (Underscoring omitted.)  But even if that is true, it does not help his case.  Our focus, after all, is not on the exceptions to section 3304(d)(1) described in section 3304(d)(2), but on the text of section 3304(d)(1) itself.  And as this text makes plain, the one-year limitations period begins to run from the time the misconduct is discovered, not from the time the agency initiates an investigation into unrelated misconduct.  And that is true even if, as in this case, an investigation into one type of misconduct ultimately leads to the discovery of unrelated types of misconduct.  (Cf. *Fox, supra*, 35 Cal.4th at pp. 802-803, 814-815 [although the plaintiff's investigation into one cause of action ultimately led the plaintiff to discover a second cause of action, that did not in itself show that the plaintiff discovered (or should have discovered) both causes of action on the same date].)

Second, Garcia appears to fault the Department for failing to initiate a distinct investigation each time it discovered a new act of misconduct.  In his apparent reading of section 3304(d)(1), all acts of misconduct discovered during a single investigation are subject to the same limitations period, and so if an agency seeks to avoid this result, it must initiate a distinct investigation for each distinct act of misconduct.  But we see nothing in the text of section 3304(d)(1) that burdens agencies with this unusual requirement.

Next, Garcia faults the trial court for "ignor[ing] the reality of Internal Affairs investigations."  The trial court, again, found Garcia's reliance on section 3304(d)(1)

failed because he did not supply evidence showing the dates the Department (or OLES) discovered his different acts of misconduct; he simply appeared to assume the Department discovered all his misconduct in late May 2018. Challenging this reasoning, Garcia suggests he had no need to provide evidence supporting his claim. He reasons that peace officers have limited access to investigative materials before their employer takes punitive action against them, and so it would be improper to require them to present supportive evidence before they can "make a claim of untimeliness under section[ ]3304(d)(1)." As best we can tell, Garcia's argument is effectively this: Because it can be difficult for an employee to obtain facts showing the agency acted in an untimely fashion, it should be enough that the employee alleged the agency acted in an untimely fashion.

We disagree on several levels. To start, Garcia's position is inconsistent with one of the oldest of legal principles: "Allegation, without facts, amounts to nothing." (*McGilvery v. Morehead* (1852) 2 Cal. 607, 608 (*McGilvery*).) The statute of limitations is an affirmative defense in an employment disciplinary action, and as with any affirmative defense, the employee must prove all facts essential to each element of the defense—not simply allege the defense. (See *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 53 [employee has the burden of raising a defense based on the statute of limitations].)

We also reject Garcia's suggestion that it is overly difficult for peace officers to obtain evidence in adverse employment actions. Although permanent civil service employees may not have a constitutional right to "a full trial-type evidentiary hearing prior to the initial taking of punitive action" (*Skelly v. State Personnel Bd., supra*, 15 Cal.3d at p. 215), as Garcia notes, they are still entitled to "certain procedural rights before the discipline becomes effective" (*ibid.*). And they are also, more relevant here, entitled to additional post-discipline procedural rights, including the right to request an administrative hearing (§ 19575) and the right to pursue discovery to inspect documents

11

and interview witnesses (Cal. Code Regs., tit. 2, §§ 59.1, subd. (a), 59.2, 59.3). In this case, following his demotion, Garcia exercised some of the rights afforded permanent civil service employees, including his right to an administrative hearing. And although he may not have pursued discovery to learn the dates when the Department discovered his various acts of misconduct, he cannot now claim he lacked an opportunity to seek this information.

Nor are we persuaded that Garcia's right to seek this information was overly restricted. In his reply brief, Garcia suggests he had too little time to pursue discovery because, under agency regulations, he needed to identify his witnesses and his planned exhibits "12 calendar days prior to the hearing" on his appeal. (Cal. Code Regs., tit. 2, § 57.1, subd. (f)(5), (8); but see *id.*, subd. (g) [parties may disclose witnesses later with good cause].) But Garcia supplies no facts tending to show that the five months between the date of his administrative appeal (Oct. 4, 2019) and "12 calendar days prior to the hearing" on his appeal (Mar. 4, 2020) was too short a time to pursue discovery. And absent supportive facts, his bare allegation "amounts to nothing." (*McGilvery, supra*, 2 Cal. at p. 608.) Our review of the record, moreover, undermines his claim. Several months before the administrative hearing, importantly, Garcia knew the name of OLES's lead investigator in this matter. But as far as we can tell, Garcia never attempted to question the investigator to learn the dates the investigator discovered his various acts of misconduct.

Finally, Garcia claims his reading of section 3304(d)(1) finds support in *Ochoa v. County of Kern* (2018) 22 Cal.App.5th 235 (*Ochoa*). In that case, a sergeant at a sheriff's office learned in March 2013 that a deputy sheriff had allegedly harassed a minor and then immediately initiated an investigation. (*Id.* at p. 239.) Two months later, in May 2013, a more senior officer authorized an internal affairs investigation based on the same conduct. (*Ibid.*) And later still, between June and July 2013, a third officer learned of additional misconduct: The deputy sheriff unlawfully used several government databases

12

to learn about the minor he had harassed. (*Id.* at p. 240.) Over a year after all these events, the sheriff's office notified the deputy sheriff of its proposed discipline (termination) and then fired him. (*Id.* at pp. 240-241.)

In an appeal concerning the timeliness of the sheriff's office's action, the parties addressed two issues: The date the sheriff's office discovered the deputy sheriff's misconduct, and the potential tolling of section 3304(d)(1)'s one-year limitations period. On the first issue, the court (and apparently the parties) focused solely on the date of discovery of the harassment, even though the case also involved the later-discovered improper searches on governmental databases. According to the deputy sheriff, the sheriff's office learned of his misconduct in March 2013, when the sergeant, who was the deputy sheriff's supervisor, learned of the alleged harassment. But according to the sheriff's office, it instead learned of the misconduct in May 2013, when a more senior officer authorized an internal affairs investigation into the harassment. (*Ochoa, supra*, 22 Cal.App.5th at p. 246.) The court ultimately agreed with the deputy sheriff. It reasoned that section 3304(d)(1)'s limitations period is triggered on "discovery by a person authorized to initiate an investigation" and, in this case, the sergeant qualified as such a person. (*Ochoa,* at pp. 246-248.) But the court then went on, in an unpublished portion of its opinion, to find the sheriff's office's investigation nonetheless timely based on the tolling of the limitations period. (*Id.* at p. 239.)

In Garcia's apparent reading of the case, *Ochoa* shows that section 3304(d)(1)'s limitations period begins to run on all an officer's improper acts once the agency initiates an investigation into any one of the officer's improper acts. But the court said no such thing. It instead explained that "the investigation of the misconduct and requisite notification to the officer must be accomplished within one year of the public agency's *discovery* 'by a person authorized to initiate an investigation' " (*Ochoa, supra*, 22 Cal.App.5th at p. 246, italics added)—which is consistent with our own reading of the statute. Because the *Ochoa* court never addressed the issue before us, we find the

decision to be of little value to our analysis. (See *People v. Brown* (2012) 54 Cal.4th 314, 330 ["cases are not authority for propositions not considered"].) More relevant, instead, are the several cases we discussed above—*Mays*, *Crawford*, *Pedro*, and *Fox*.

In short, consistent with the statutory text, case precedent, and the principle of avoiding absurd results, we hold section 3304(d)(1)'s one-year limitations period begins to run on an act of misconduct from the time the misconduct is discovered. (See *Mays, supra*, 43 Cal.4th at p. 321; see also *Bacilio v. City of Los Angeles* (2018) 28 Cal.App.5th 717, 724 ["The 'one-year limitation period' begins to tick once a 'person authorized to initiate an investigation' [citation] 'discovers, or through the use of reasonable diligence should have discovered' the act, omission, or other allegation of misconduct"].) And because Garcia presents no evidence of the dates the Department or OLES discovered, or even should have discovered, his different acts of misconduct that ultimately formed the basis of his demotion, his appeal must fail.

Although the Department also offers two additional arguments in favor of affirmance, we need not address either here. The Department first contends it provided timely notice of its disciplinary action even under Garcia's approach. It bases its argument on its initial notice of adverse action in April 2019. In its view, although the Department later retracted this notice and issued a separate notice of adverse action in September 2019, we should, in effect, treat the September 2019 notice as dating back to the time of the earlier April 2019 notice. The Department further contends section 3304(d)(1)'s one-year limitations period was tolled from May 3, 2019, when Garcia was terminated after the April 2019 adverse action, to September 5, 2019, when Garcia was reinstated after the Department withdrew the April 2019 adverse action. It reasons that section 3304(d)(1)'s limitations period "is tolled during any period in which a peace officer is not employed as such." But because we find Garcia's challenge fails for the reason discussed, we need not address these alternative grounds for affirmance.

14

DISPOSITION

The judgment is affirmed. The Department shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

                                   _____,

                                   HULL, Acting P. J.

We concur:

_____,
DUARTE, J.

_____,
RENNER, J.

Filed 2/21/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LUIS GARCIA, | C094235 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2020-80003478-CU-WM-GDS) |
| v. | |
| STATE DEPARTMENT OF DEVELOPMENTAL SERVICES et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James P. Arguelles, J. Affirmed.

Bennett, Sharpe & Bennett, Barry Jay Bennett, and Ann M. Bennett for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Celine M. Cooper, Supervising Deputy Attorney General, and Paul Batcher, Deputy Attorney General for Defendants and Respondents.

16

THE COURT:

The opinion in the above-entitled matter filed on January 26, 2023, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____,
HULL, Acting P. J.


_____,
DUARTE, J.


_____,
RENNER, J.